SALEM ELEVATOR WORKS, INCORPORATED, *vs.* COMMISSIONER OF BANKS & another.

EDGAR B. FRASER *vs.* SAME.

Suffolk.    January 21, 1925. — May 21, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Trust,* Constructive. *Trust Company. Banks and Banking. Equity Jurisdiction,* To enforce constructive trust.

Two suits in equity, based upon facts of the same general character, by depositors in a trust company against the commissioner of banks in possession of the property and business of the trust company, were heard by the same master and, after the filing of the master's reports, were consolidated and reserved for a hearing by this court. In the record in one case, a general custom of banks and trust companies, adopted by the defendant trust company in dealing with its depositors,

was shown. *Held,* that, although such facts did not definitely appear in the record of the second suit, they must be assumed to be equally true in that case also.

When a bank receives upon deposit a check indorsed without restriction and gives credit for it to its depositor as cash in a drawing account, so that the depositor may draw against the credit at once, and there are no notices upon pass books or statements in deposit slips or other circumstances indicating a different understanding, title passes at once to the bank, it becomes the purchaser and the check becomes its absolute property immediately upon deposit. Per RUGG, C.J.

Where checks are not finally credited to the account of a customer until collected, where the customer cannot as of right draw against checks until collected, and where checks are entered in the accounts of customers subject to payment, the collecting bank acts only as agent of the customer in the collecting; the relation of debtor and creditor does not arise until the check has been collected. Per RUGG, C.J.

Depositors in a certain trust company, in placing negotiable paper with it for collection, acted with notice and upon the understanding that the company "in collecting notes and drafts received from its customers, whether the same be placed to their credit or not, acts only as their agent." The trust company cleared through a national bank. A depositor placed with the trust company, properly indorsed checks on other banks and the trust company transferred them to the national bank for clearing. Before they were collected through the clearing by the national bank, the commissioner of banks took possession of the property and business of the trust company and did not continue its business. The method of business between the national bank and the trust company was for the trust company to keep on deposit with the national bank a special fund upon which it was not to draw, and, also, in a general account, sufficient funds at all times to meet the requirements of the clearing. At the time when the commissioner took possession of the property and business of the trust company, the general account was overdrawn, and thereafter the national bank made no further payments in clearing on paper running against the trust company. Later, and after collecting the checks of the depositor above described, the national bank balanced its account by the use of a part of the special fund, and paid the balance of the special fund to the commissioner. The depositor brought a bill in equity against the commissioner and the trust company for payment in full of the amount so collected, after the commissioner had taken possession, upon the checks he had deposited with the trust company for collection. *Held,* that

(1) In making collection for the plaintiff, the trust company acted as agent, and not as debtor, of the plaintiff;

(2) It was an implied condition of that contract of principal and agent that the trust company should continue to do its ordinary business of banking according to custom;

(3) The agency terminated when the commissioner took possession;

(4) *It seems* that, if the commissioner received the proceeds of the plaintiff's checks, they were not received on a debtor and creditor

account, and, while the commissioner with regard thereto would not be strictly a trustee for the plaintiff, the plaintiff would have a right of priority over other depositors as to such funds if the funds could be traced and identified;

(5) The proceeds of the collection of the checks here in issue did not become an accretion of the special fund in the hands of the national bank;

(6) The mere circumstances, that the proceeds of the checks in question went into the general assets of the trust company and to that extent increased those assets, would give the plaintiff no preferential rights;

(7) The proceeds of the plaintiff's checks, if received by the commissioner, could not be traced or identified;

(8) The suit must be dismissed.

Two BILLS IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk, the first on February 7, 1922, and the second on March 4, 1922, each seeking to require payment in full to the plaintiff by the commissioner of banks in possession of the property and business of the Cosmopolitan Trust Company of the proceeds of checks deposited with the trust company for collection and by the trust company transferred to the National Union Bank for clearing but not collected through clearing until after the commissioner had taken possession of the property and business of the trust company.

The suits were referred to the same master, who filed a separate report for each suit on December 23, 1924. Material findings in the report are described in the opinion. In the second suit, the plaintiff filed, among others, exceptions based on the following objections:

2. The master did not find that the plaintiff had no right to draw on the checks for $2,500 before they were paid by the bank on which they were drawn.

3. The master did not find that the relation between the Cosmopolitan Trust Company and the plaintiff as to the $2,500 was never that of ordinary debtor and creditor.

6. The master did not find that the commissioner on taking possession of the bank did not get a right, which the bank itself never had, to continue the collection after the agency therefor had been revoked.

7. The master did not find that the closing of the bank

*ipso facto* revoked the relation of principal and agent between the plaintiff and the bank, or the bank commissioner, or the liquidating agent as to the collection of the checks for $2,500.

By order of *Crosby*, J., the suits were consolidated and reserved for determination by the full court.

*G. I. Cohen*, for Salem Elevator Works, Incorporated.

*G. C. Scott*, for Fraser.

*D. L. Smith*, (*R. W. Nason* with him,) for the defendant.

*J. B. Studley*, as *amicus curiae*, filed a brief by leave of court.

Rugg, C.J. The Cosmopolitan Trust Company, although conducting a general banking business in Boston up to the time when it was closed, September 25, 1920, was not a member of the Clearing House Association and cleared all its checks through the National Union Bank of Boston, which acted as its agent in this respect. The plaintiff, the Salem Elevator Works, Inc., for some time prior to September 25, 1920, had been a depositor with the Cosmopolitan Trust Company, to whom it had forwarded by mail checks for various sums on sundry dates. On the afternoon of September 24, 1920, it mailed to the trust company a check drawn by a third person on another Boston bank. Receipt of it was acknowledged on the day following. This check reached the trust company in the usual course of mail at about eight fifteen o'clock in the morning of September 25, 1920. With other checks it was indorsed according to custom by an employee of the trust company to the order of the National Union Bank of Boston and sent by messenger to that bank for collection through clearing before the commissioner of banks took possession of the property and business of the trust company at two minutes past nine o'clock in the forenoon of the same day. The National Union Bank of Boston presented the check for clearing at ten o'clock of the same morning and received payment thereof. The amount of the check was credited to the account of the Salem Elevator Works, Inc., by the trust company and constituted part of an item entered to the credit of the trust company in its general account with the National Union Bank of Boston.

The plaintiff Fraser on and before September 24, 1920, had a checking account with the Cosmopolitan Trust Company. He sent by mail two checks drawn on a New York bank·to the Cosmopolitan Trust Company, which were received by it on September 24, 1920, and on the same day deposited by it in its general account with the National Union Bank of Boston. That bank collected them of the bank on which they were drawn at some time on September 25, 1920, after the commissioner of banks had taken possession of the property and business of the trust company.

It appears in the Fraser case that the trust company issued to each of its general banking depositors a pass book upon which was printed with other matter a statement that the trust company, "in collecting notes and drafts received from its customers, whether the same be placed to their credit or not, acts only as their agent," and a notice to depositors that checks are entered in their accounts subject to payment. The defendants in their answer also aver that the trust company "followed the general custom of banks and trust companies in Boston of refusing to allow depositors to draw against checks or other credit items until the same had been collected from the bank or person upon which such checks were drawn." Although these facts do not distinctly appear in the record in the case of the Salem Elevator Works, Inc., they must be assumed to be equally true of that case also. These facts are stated as constituting a general practice. The defendants have argued the cases on the footing that there is no material difference in the facts in the two cases. They are considered on that footing.

When a bank receives upon deposit a check indorsed without restriction and gives credit for it to its depositor as cash in a drawing account, so that the depositor may draw against the credit at once, and there are no notices upon pass books or statements in deposit slips or other circumstances indicating a different understanding, title passes at once to the bank, it becomes the purchaser and the check becomes its absolute property immediately upon deposit. *Taft* v. *Quinsigamond National Bank*, 172 Mass. 363. *Brooks* v. *Bigelow*, 142 Mass. 6. *Burton* v. *United States*, 196 U. S. 283, 302, 303.

*Heinrich* v. *First National Bank of Middletown, New York,* 219 N. Y. 1, 5, 6.

Where checks are not finally credited to the account of a customer until collected, where the customer cannot as of right draw against checks until collected, and where checks are entered in the accounts of customers subject to payment, the collecting bank acts only as agent of the customer. The relation of debtor and creditor does not arise until the check has been collected. *Manufacturers' National Bank* v. *Continental Bank,* 148 Mass. 553. *Freeman's National Bank* v. *National Tube Works Co.* 151 Mass. 413. *Moors* v. *Goddard,* 147 Mass. 287.

It is manifest from the facts already stated that the checks here in question come within the operation of the principle last stated. The relation between the depositor plaintiffs and the trust company was not that of debtor and creditor, but that of principal and agent, until after the checks were actually collected. The trust company became the agent of the plaintiffs for the collection of the checks. The relation of debtor and creditor did not arise until the checks were collected and finally credited to the depositor.

It was an implied condition of that contract of principal and agent that the trust company should continue to do its ordinary business of banking according to custom. When the commissioner of banks took possession of the property and business of the Cosmopolitan Trust Company, he closed its doors and caused it to cease to do business in the usual course. He did not continue the banking business of the trust company in all its branches. It is unnecessary to consider questions which might have arisen in that event.

The same principle applies under these circumstances as has been applied to national banks in a similar situation. It is not practicable to establish any sound distinction based on the somewhat differing powers of the comptroller of the currency in liquidating a national bank and those of the commissioner of banks in liquidating trust companies. It is equally implied in one instance as in the other that the banking agent for collection of checks shall continue to do business in the customary way in order that the agency may

continue. If it ceases to do so, the agency to collect the check, to appropriate the proceeds to itself and to substitute for the money its own liability as for a debt, has come to an end. *Manufacturers' National. Bank* v. *Continental Bank,* 148 Mass. 553. It was conceded in *Hecker-Jones-Jewell Milling Co.* v. *Cosmopolitan Trust Co.* 242 Mass. 181, 184, that the trust company was the agent for the collection of the check.

The agency of the trust company to collect the checks having come to an end when the commissioner of banks took possession of its property and business and closed its doors, the commissioner in receiving the money proceeds of the checks, provided they can be traced into any particular fund, holds them for the benefit of the true owner. The depositors can follow the proceeds of their checks wherever they can find them, in the absence of superior rights. *In re Jarmulowsky,* 243 Fed. Rep. 632; affirmed, 249 Fed. Rep. 319. *Beal* v. *Somerville,* 50 Fed. Rep. 647; 1 C. C. A. 598.

Other facts beyond the revocation of the agency to collect must be established before the plaintiffs can prevail. The plaintiffs must be able to trace their property into some particular fund before they can reclaim it or gain a priority over general creditors in the event of the insolvency of the trust company. The proceeds from the collection of the checks after the revocation of the agency did not, strictly speaking, create a trust. The transaction more resembled a conversion of the checks and their proceeds. The rights of the plaintiffs are for reclamation or a priority over other creditors in payment of their claims. In these circumstances their rights can rise no higher than they would if the money were a true trust.

In this Commonwealth it must be shown that the property or money has passed into specific property or a definite fund which may be distinguished from general assets before there can be reclamation or priority of payment. It is not enough to show that property went into the insolvent estate, which has been enriched unjustly to that amount, and that the proceeds remain unexpended somewhere in the estate. *Lowe* v. *Jones,* 192 Mass. 94, and cases there reviewed.

*Hewitt* v. *Hayes*, 205 Mass. 356, 361, 362.    *Old Colony Trust Co.* v. *Puritan Motors Corp.* 244 Mass. 259.

The facts disclosed by the master's report, to which this principle must be applied as a test, summarily stated are these: The National Union Bank of Boston was the clearing agent of the trust company at the time of the events here in controversy, and had been since January, 1919, pursuant to an agreement between the two that the bank should act as clearing agent, that the trust company should have at all times on deposit with the bank collected funds sufficient to meet the clearing, and should in addition keep with the bank a special deposit of $300,000 upon which the trust company was not to draw. This special fund after it was established remained undisturbed until after September 25, 1920. The business transacted as clearing agent. was carried in the general account upon the books of the bank and the trust company. To this general account were credited all checks and other items deposited by the trust company for collection, and to it were charged all checks drawn upon the trust company and presented by other banks to the National Union Bank of Boston for clearing, and also certain direct drafts for cash made upon that bank by the trust company. The general account was overdrawn on a number of occasions, mainly due to attempts of the trust company to draw against uncollected funds. The officers of the bank remonstrated against such conduct but did nothing further. At the opening of business on September 24, the balance due the trust company on the general account was $40,552.59. During that day the bank received from the trust company checks aggregating $226,638.05, cleared checks drawn on the trust company totalling $314,973.64, and delivered to the trust company $135,000 in cash, making $449,973.64 charged against that general account; so that, on the morning of September 25 it was overdrawn to the extent of $182,783. On September 25 the general account was credited with $149,436.83, all of which (with the exception of $2,653.70, including the check sent by the Salem Elevator Works, Inc.) had been received by the bank on the previous day too late to be entered on the books. At the time

when the commissioner of banks took possession of the trust company all the checks and items making up the $149,436.83 and a substantial part of those making up the $226,638.05 were uncollected. After such taking possession no checks drawn on the trust company were paid. Some checks so credited were returned uncollected, and other items had to be corrected, so that, as finally adjusted the general account was overdrawn to the amount of $88,483.49. The checks deposited by both these plaintiffs came into the custody of the National Union Bank of Boston before the commissioner of banks took possession of the trust company, and as and when collected by it were credited to the general account, which, as already stated, was on these two days and all times thereafter overdrawn to the amount of many thousands of dollars. On October 1, 1920, the National Union Bank of Boston closed out the special account, credited the amount thereof to the general account, thus wiping out the overdraft. As a result, the final balance of credit in favor of the trust company was $211,516.51.

It is manifest that the basis of business between the bank and the trust company under their agreement was the existence of two distinct, disconnected funds or accounts, one the general and the other the special. So long as normal relations continued, the identity of each of these funds was kept wholly separate. No encroachment was made upon the special fund even to balance overdrafts on the general account. Such overdrafts were always met in some other way. The special fund was as independent and detached as if it were in another bank. The importance of the maintenance of these two accounts and the complete and continued integrity of the special fund as the foundation of the business relations between the two institutions can readily be perceived. It was no mere matter of bookkeeping. It was fundamental to the transaction of the business. The proceeds of the collections of the checks here in issue did not become an accretion of the special fund. They did not go into the special fund or form any part of it. These checks were put on the general account. They were credited to that account when sent to the bank by the trust company. The

proceeds of these collections went into the general account and helped to that extent to diminish the overdraft thereon. The general account was exhausted. It was a deficit, not a fund. The proceeds of these checks were but a slight diminution of that deficit. The circumstance that six days after the commissioner had taken possession of the trust company the bank paid the overdraft due to it out of the special fund does not accelerate the rights of the plaintiffs. It does not put the proceeds of their checks into a special fund. It does not destroy the fact that the only place into which those proceeds went was the overdrawn general account which was a liability and not an asset of the trust company. The conduct of the bank in recouping its own loss growing out of the overdraft on the general account cannot enlarge the rights of these plaintiffs which were fixed on September 25, 1920, when their checks were collected and the commissioner of banks took possession of the trust company. That conduct was the exercise of a right which arose out of the insolvency of the trust company and the different relationship which the bank bore to it for that reason. Neither the trust company nor the commissioner of banks in possession of the property had anything to do with that act of the bank. They could neither compel nor prevent that act. As already pointed out, the simple circumstance that the proceeds of these checks have gone into the general assets of the trust company and to that extent increased those assets, gives the plaintiffs no preferential rights. All the facts set forth in the record fail to show that the plaintiffs are entitled to special preference or that they have rights superior to general creditors.

It follows that the general finding of the master, to the effect that the proceeds of the checks here in suit are traced specifically into a particular fund, cannot stand in view of the other particular facts found by him. The exception of the defendants to that finding in the Fraser case must be sustained. This result accords with general intimations in other decisions. *Steele* v. *Commissioner of Banks in re Prudential Trust Co.* 240 Mass. 394, 398. *Hecker-Jones-Jewell Milling Co.* v. *Cosmopolitan Trust Co.* 242 Mass. 181, 187,

188. *Central Trust Co. of Illinois* v. *Hanover Trust Co.* 242 Mass. 265, 268, 269.

These conclusions are decisive against the rights of the plaintiffs. It is not necessary to consider the other questions argued. An interlocutory decree is to be entered in the Fraser case sustaining the exception of the defendants to the master's report and the plaintiff's exceptions 2, 3, 6 and 7, and overruling his other exceptions to the master's report and confirming the master's report in all other respects; an interlocutory decree is to be entered in the case of Salem Elevator Works, Inc.; confirming the master's report; and a final decree is to be entered in each case dismissing the bill.

*So ordered.*