**DICKSON v. FIRST NAT. BANK OF BUFFALO, OKL., et al.**

Circuit Court of Appeals, Eighth Circuit. May 25, 1928.

No. 8013.

1. **Courts ⬅372(1)—Whether proceeds of checks collected by insolvent bank constitute trust fund, entitling depositor to preference, must be determined by general commercial law, as defined by federal courts.**

Whether insolvent bank's collection of checks created fiduciary relation of principal and agent between it and one depositing them in forwarding bank, so as to constitute proceeds a trust fund, entitling depositor to preference, must be determined by principles of general commercial law, as defined by federal courts, independent of state law.

2. **Banks and banking ⬅126—Deposit of check with bank and entry of credit therefor creates relationship of debtor and creditor, not principal and agent.**

Where the owner of a check deposits it with a bank and receives credit therefor, the relationship of debtor and creditor, not of principal and agent, is created, though check may be charged against depositor's account, when dishonored by bank on which drawn.

3. **Banks and banking ⬅166(1)—Depositor of checks in forwarding bank could not treat collecting bank as his agent, so as to entitle him to preference on its insolvency.**

One depositing checks in bank, which forwarded them to another bank for collection, could not treat latter bank as his agent in handling them, so as to be entitled to preference of claim to proceeds on its insolvency; such bank being agent of forwarding bank.

4. **Banks and banking ⬅166(1)—Depositor of checks, entire proceeds of which were applied on collecting bank's indebtedness to drawee bank and Federal Reserve Bank, held not entitled to preference on collecting bank's insolvency.**

Where accounts of collecting and drawee banks were adjusted, and draft for balance given former when checks were presented for collection, such draft was forwarded to, and deposited to collecting bank's credit by, Federal Reserve Bank, which applied collecting bank's entire balance on its indebtedness to Reserve Bank, owner depositing checks in bank which forwarded them to collecting bank was not entitled to preference of claim to proceeds on latter's insolvency, as transaction did not increase its assets available for distribution to creditors, but merely decreased its indebtedness to Reserve Bank.

5. **Banks and banking ⬅80(7)—To establish preference, trust funds must be traced into insolvent bank's assets.**

To establish a preference, trust funds must be traced into the assets of the insolvent bank.

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by C. B. Dickson against the First National Bank of Buffalo, Okl., and the receiver thereof. Judgment for defendants, and plaintiff appeals. Affirmed.

John J. Hildreth, of Guthrie, Okl., and H. W. Hart, Glenn Porter, and Enos E. Hook, all of Wichita, Kan., for appellant.

H. J. Sturgis and J. Wilford Hill, both of Enid, Okl., for appellees.

Before LEWIS, Circuit Judge, and SCOTT and DAVIS, District Judges.

DAVIS, District Judge. This is an action in equity, brought by C. B. Dickson, a citizen of Kansas, against the First National Bank of Buffalo, Okl., and Carl O. Nelson, the receiver of said bank, in the District Court of the Western District of Oklahoma. Judgment was entered in favor of the defendants, and the case has been brought to this court on appeal. The parties will be designated as in the court below.

The case was submitted to the court on an agreed statement of facts, a summary of which is as follows:

That on December 4, 1924, one C. F. Myles executed two checks, drawn on the Central State Bank of Buffalo, Okl., aggregating $2,007.50, payable to the Railroad Building, Loan & Savings Association. The plaintiff became the owner of these checks and deposited them on December 6, 1924, in his checking account in the Fourth National Bank of Wichita, Kan. Thereafter the Fourth National Bank, in the usual course, forwarded the checks for collection to the defendant bank. These checks, with other items, reached the defendant bank from the Federal Reserve Branch Bank at Oklahoma City on December 11, 1924. On the same day the defendant bank took both of the checks, together with other items for collection, totaling $5,196.77, to the Central State Bank of Buffalo, Okl., and received therefor items on the defendant bank in the sum of $1,008.02, and a draft for the balance, $4,188.75. This draft was forwarded by the defendant bank to the Federal Reserve Bank at Kansas City, and collected and credited to

the account of the defendant bank. The defendant bank was indebted to the Federal Reserve Bank at Kansas City in the sum of $188,977.19, by reason of rediscounts, taken under a contract whereby the Federal Reserve Bank was authorized to charge any of such paper to the account of the defendant bank, whenever the same became due or any paper which they deemed undesirable. The Federal Reserve Bank at Kansas City, on December 13, 1924, charged undesirable paper to the account of the defendant bank in the sum of $22,092.13, leaving no balance in the said Federal Reserve Bank to the credit of the defendant bank.

It was admitted that C. F. Myles, who drew the checks, had on deposit in the Central State Bank funds sufficient to cover both checks, and that when presented they were paid in the manner above stated. It is also conceded that the defendant bank was insolvent on December 11, 1924, and that such insolvency was known to the officers of the said bank. The defendant bank was closed by order of the board of directors on December 13, 1924, and defendant receiver took charge on December 27, 1924.

The plaintiff contends that, when the First National Bank of Buffalo collected the proceeds of the two checks, the transaction resulted in the creation of a relation of principal and agent between the plaintiff and the defendant bank; that this relation amounts in law to a fiduciary relation, and that the defendant bank became a trustee, and that the proceeds of the checks constituted a trust fund; that this trust fund was, by the defendant, mingled with its own fund, and the entire amount at insolvency went into the hands of a receiver; that this claim of the plaintiff against the insolvent estate should be treated as a preference and paid before general claims.

[1] The issue in this case is to be determined by resort to the principles of the general commercial law, as defined by the federal courts, independent of the state law on the subject. Oates v. National Bank, 100 U. S. 239, 25 L. Ed. 580.

[2] It seems to be the well-established rule that, where the owner of a check deposits it with a bank and receives credit therefor, the relationship of debtor and creditor, and not that of principal and agent is created. This relationship is not affected by the fact that upon dishonor of the check by the bank upon which it is drawn it may be charged against the account of the depositor. In the recent case of City of Douglas v. Federal Reserve Bank of Dallas, 271 U. S. 489, 46 S. Ct. 554,

70 L. Ed. 1051, the facts were very similar to those in the case before this court, and it was there held:

"When commercial paper is indorsed without restriction by a bank depositor, and is at once passed to his credit by the bank to which he delivers it, he becomes the creditor of the bank; the bank becomes the owner of the paper, and in making the collection is not the agent for the depositor. * * * One who indorses a check in blank and deposits it in his bank account cannot maintain an action against another bank to which the paper is sent for collection, since, having surrendered his rights in the paper, no relationship exists between him and the collecting bank which can be made the basis of a recovery for its negligent acts."

In Burton v. U. S., 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482, it was said:

"When a check is taken to a bank, and the bank receives it and places the amount to the credit of a customer, the relation of creditor and debtor between them subsists, and it is not that of principal and agent."

See, also, Thompson v. Riggs, 5 Wall. 663, 18 L. Ed. 704; Davis v. Elmira Savings Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700.

[3] These cases seem to conclusively indicate that the plaintiff is not entitled to treat the defendant bank as having been its agent in the handling of the two checks with which we are concerned in this case. The defendant bank was the agent of the institution which forwarded the checks to it for collection, and stood in no fiduciary relation to plaintiff.

[4] But, even if the plaintiff's position were sustained in this respect by the authorities, he would not be entitled to a preference for another reason. When the two checks in question were presented by the defendant bank to the Central State Bank of Buffalo, the accounts of these two institutions were adjusted and the balance was given to the defendant in the form of a draft. This draft was forwarded to the Federal Reserve Bank at Kansas City and deposited to the credit of the defendant. The entire balance of the defendant bank in the Federal Reserve Bank was applied on its indebtedness to the Federal Reserve Bank. So that the proceeds of these two checks were consumed in satisfying defendant bank's obligations to the Central State Bank of Buffalo and to the Federal Reserve Bank at Kansas City. The ultimate result was that the indebtedness of the defendant bank was decreased to the amount of these two checks. The transaction did not

in any sense result in increasing the assets of the bank which were available for distribution to creditors. To grant plaintiff a preference would not be to authorize him to take from the assets something which rightfully belonged to him by reason of his property being wrongfully added to the assets, but it would be to permit him to take from the assets funds which belong to other creditors. Since plaintiff contributed nothing to the assets of the defendant bank, when the failure came, no portion of his funds went into the receiver's hands. The same situation has frequently been presented to this court. In Empire State Surety Co. v. Carroll County, 194 F. 593, it was said:

"It is indispensable to the maintenance by a cestui que trust of a claim to preferential payment by a receiver out of the proceeds of the estate of an insolvent that clear proof be made that the trust property or its proceeds went into a specific fund or into a specific identified piece of property which came to the hands of the receiver, and then the claim can be sustained to that fund or property only and only to the extent that the trust property or its proceeds went into it. It is not sufficient to prove that the trust property or its proceeds went into the general assets of the insolvent estate and increased the amount and the value thereof which came to the hands of the receiver."

In the case of Farmers' National Bank v. Pribble, 15 F.(2d) 175, this court held that:

"The fact that the claimant's property paid or reduced the indebtedness or liability of the insolvent corporation, so that it will pay a larger percentage of its debts, justifies no lien on its assets by or preference in payment to the cestui que trust (1) because such a reduction of indebtedness does not increase the property or the value of the property of the insolvent; and (2) because the property of the claimant so used to pay a part of the insolvent's general indebtedness or liability never goes into, and therefore cannot be traced into, the property or assets of the insolvent which subsequently come into the possession of the receiver."

[5] The same doctrine has been announced in other cases in this circuit. State Bank of Winfield v. Alva Security Bank, 232 F. 847; Mechanics & Metals Nat. Bank v. Buchanan, 12 F.(2d) 891. These cases conclusively hold that, to establish a preference, trust funds must be traced into the assets of an insolvent estate. This situation is not here presented.

The court below entered the proper judgment, and it will be affirmed.