In the Matter of the Application of BENJAMIN F. MAGED and Another, Copartners under the Name of MAGED & FRIEDLAND, to Compel THE BANK OF UNITED STATES, by JOSEPH A. BRODERICK, New York State Superintendent of Banks, to Turn over Certain Moneys.

JOSEPH A. BRODERICK, Superintendent of Banks, in Charge of the Liquidation of the Bank of United States, Appellant; BENJAMIN F. MAGED and Another, Copartners under the Name of MAGED & FRIEDLAND, Respondents.

Second Department, January 8, 1932.

*Harold N. Cohen* and *George S. Elpcrn* [*Arthur Ofner* and *Warren C. Fielding* with them on the brief], *Carl J. Austrian*, attorney, for the appellant.

*David B. Friedland*, for the respondents.

SCUDDER, J.   On December 10, 1930, respondents deposited to their account in a Brooklyn branch of the Bank of United States the sum of $50 in cash and a check for $150.   The deposit, being made after three P. M., was credited to them as of December 11, 1930.   The check was drawn by a third party on the Midwood Trust Company to respondents' order.   The Bank of United States indorsed the check for collection and sent it to the Federal Reserve Bank no later than one-thirty A. M. on December 11, 1930.   Thereafter, and on the same date, the Superintendent of Banks closed the Bank of United States and took possession of its affairs.

Respondents moved at Special Term for an order directing the Superintendent of Banks to pay them the amount of the deposit. The Special Term granted the petition as to the $150 check, but denied it as to the cash deposit.

When received by the Federal Reserve Bank, the check was provisionally credited to the Bank of United States and sent to Midwood Trust Company for payment, subject to the latter's right to return it before three P. M. upon the date of presentment.

At the close of business on December 10, 1930, and at the opening of business on December 11, 1930, the Bank of United States had a credit balance with the Federal Reserve Bank of New York of over $12,000,000 and owed $19,000,000.   At the close of business on December 11, 1930, its balance was $5,419,895.62 and it owed $7,000,000.

On December 11, 1930, the Federal Reserve Bank credited the Bank of United States, among other items, with checks collected, including those on out of town banks, amounting to over $7,000,000 and on the same day it charged against the account of the Bank of United States $11,992,171.22 on account of the $19,000,000 indebtedness.   As a result of business transacted on December 12, 13 and 15, 1930, between the two banks, including the sale of

certain collateral held by the Federal Reserve Bank, the Bank of United States owed nothing to the Federal Reserve Bank, and had a credit balance of $308,606.97. On December 15, 1930, the remaining collateral was released to the Bank of United States, then in liquidation. It appears that the Bank of United States, on December 11, 1930, did not have a credit balance with the Federal Reserve Bank in the general fund. On the contrary, there was a deficit, which was wiped out by selling the collateral, consisting of treasury notes, held in a special account called " special credits."

Respondents rely upon the decisions in *Altmark* v. *Bank of United States* (233 App. Div. 854, decided by this court in June, 1931) and *Matter of Vavoudis* ([1st Dept.], Id. 672, affirming Special Term [141 Misc. 823] without opinion). They contend that the Bank of United States was only a collecting agent and that the act of the Superintendent of Banks in taking over the defunct bank revoked the agency and the Superintendent then held the proceeds of the $150 check in trust and must return that sum to them.

In the *Altmark* case we affirmed an order directing the Superintendent of Banks to turn over to plaintiff the proceeds of a certain check, upon the authority of the *Vavoudis* case. That case was decided upon the theory that the bank, when it received the check for deposit, was merely an agent for the purpose of collection. When the Superintendent of Banks took possession of the Bank of United States, the Vavoudis deposit had not been collected, so that the " agency of the bank was revoked by operation of law."

In the case at bar the Superintendent of Banks contends that respondents are bound to trace the fund before they can gain a priority over general creditors of the bank. Reference is made to *Salem Elev. Works, Inc.,* v. *Commissioner of Banks* (252 Mass. 366). There the Commissioner of Banks of Massachusetts took possession of a trust company on September 25, 1920, before plaintiff's checks, which were deposited September twenty-fourth for collection, had been collected. The facts in that case, which are reviewed at length in the opinion, are very similar to those in the case before us. It was there held that the plaintiff had no rights superior to general creditors.

The facts of the instant case show that the Bank of United States on December 11, 1930, had only a deficit with the Federal Reserve Bank in the general fund. It could not trace a *res* for a trust into a deficit. The general rule in equity, as in law, is that to follow trust funds and subject them to the operation of the trust, they must be identified. (*Matter of Cavin* v. *Gleason*, 105 N. Y. 256; *Matter of Hicks*, 170 id. 195.)

In the last cited case, Judge WERNER, in his concurring opinion, said: " The right of the *cestui que trust* to follow and appropriate the trust property ceases only when the means of ascertainment fail (*Holmes* v. *Gilman*, 138 N. Y. 376), which is but another way of saying that it must be ' ascertained, traced and identified.' "

In the instant case the fund into which respondents' check went was exhausted by the action of the creditor bank, the Federal Reserve Bank, against its debtor, the Bank of United States. It, therefore, could not possibly be " ascertained, traced and identified," because there was nothing left to identify.

The *Vavoudis* and *Altmark Cases* (*supra*) are distinguishable from the case now under consideration. In the former the proceeds of the check deposited in the Bank of United States on December 10, 1930, were received by such bank on December thirteenth. The learned Special Term judge who considered that case said: " The moneys thereafter collected by the Superintendent were no part of the assets of the bank, but belonged to the depositor." There the Superintendent of Banks, after closing the bank, received and retained the proceeds of the deposited check, which is quite different from the situation with which we are now confronted. Here the proceeds of the check were appropriated by the Federal Reserve Bank, among many other items, as an offset against its claim against the defunct bank. The Superintendent of Banks never had possession of such funds.

In the *Altmark* case the collection of the check and the receipt of the proceeds occurred after the Superintendent of Banks had taken possession of the Bank of United States, and the funds were part of those in the hands of the Superintendent, a situation similar to that in the *Vavoudis* case.

The order, in so far as it directs payment of the amount of deposit represented by the check, should be reversed on the law and the respondents' motion to that extent denied, but in view of the stipulation of the parties no costs are allowed.

YOUNG, HAGARTY and DAVIS, JJ., concur; KAPPER, J., concurs in result.

Order, in so far as it directs payment of the amount of deposit represented by the check, reversed on the law, without costs, and motion to that extent denied, without costs.