## NOMLAND v. FIRST NAT. BANK OF KANSAS CITY, MO.
### No. 9368.

Circuit Court of Appeals, Eighth Circuit.
April 3, 1933.

**400**

Archibald A. Lee, of Denver, Colo. (Benjamin Griffith, of Denver, Colo., and W. K. Skinner, of Stockton, Kan., on the brief), for appellant.

Paul R. Stinson, of Kansas City, Mo. (I. P. Ryland, Arthur Mag, Roy B. Thomson, Alfred M. Seddon, Paul E. Basye, and Ryland, Stinson, Mag & Thomson, all of Kansas City, Mo., on the brief), for appellee.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment entered against appellant, plaintiff below, after a trial in a law action, in which a jury was waived and the case tried to the court.

Most of the facts are undisputed—among them the following: The National State Bank of Stockton, Kan. (hereafter called the Stockton Bank), became insolvent and suspended business on November 14, 1927, and appellant was duly appointed, and is still acting, as its receiver. On November 10, 1927, the defendant, the First National Bank of Kansas City, Mo. (hereafter called the Kansas City Bank), mailed a cash letter to the Stockton Bank containing checks amounting to $1,460.94 drawn upon the latter bank by certain of its depositors. These checks the Kansas City Bank had received from a number of its own depositors, and had given to such depositors credit upon their respective accounts. The form of deposit slip used by the Kansas City Bank for said depositors was the usual form in use by said bank, and

is set out in the margin.[1] In sending these checks to the Stockton Bank, the Kansas City Bank handled them through its transit department, and not through its collection department. On November 12, 1927, the Stockton Bank received said checks and charged the same on the respective accounts of its depositors who had issued them. On the same day, the Stockton Bank mailed to the Kansas City Bank a cash letter containing a draft for $1,460.94 drawn by the Stockton Bank on the Kansas City Bank in remittance for said checks; and debited its own account with the Kansas City Bank with that amount. The Stockton Bank prior to the time of drawing the draft had to its credit with the Kansas City Bank the sum of $3,-592.62. Monday morning, November 14, 1927, the Kansas City Bank received the cash letter and the draft from the Stockton Bank; but before it had made any entry or record of the receipt of the draft, the Kansas City Bank received a telegram from R.

---

[1] "Deposited with
First National Bank
For the Credit of

---

"Kansas City, Mo., ......19..

"Any individual, firm or corporation (hereinafter referred to as customer) by delivery to this bank of items for cash, credit or collection agrees that:

"(1) Items may be handled as customer's agent and under existing or future rules or regulations of the Kansas City Clearing House Association, of the Federal Reserve Board, and/or any Federal Reserve Bank to which forwarded; (2) This bank as agent, or owner, is not liable for neglect, default or failure of banks selected as agents, or sub-agents, or for losses in transit; (3) Items not on this bank are received at customer's risk, and, if credited, are credited conditionally, subject to payment and may be charged back at any time until actual cash payment therefor is received and checks of customer may be refused if drawn against such conditional credits; (4) This bank and/or subsequent collecting banks or agents, may present or send items for payment direct to the bank on which drawn, or at which payable, or to another bank in that city, and may accept either cash, draft or check in payment of such items, and will not be liable for collection of drafts or checks so received; (5) Should any item be not paid, or any bank fail to remit proceeds or issue paper therefor which is dishonored, any credit given may be cancelled whether or not the original item or dishonored paper sent therefor can be delivered to customer; (6) Items drawn on this bank not good at close of business on day deposited may be charged back to depositors; (7) Items drawn on or by other banks or payable at other banks in this City, or Kansas City, Kansas, may be carried over for presentation under Clearing House arrangements or otherwise, on business day following date of deposit. Items payable outside of this City, need not be forwarded until business day following receipt; (8) Customer agrees to indemnify this bank against any loss on account of any claim made by maker, drawee, or any prior endorser on any item by reason of handling on above terms.

| Currency | Dollars | : | Cents |
| --- | --- | --- | --- |
| Coin | | | |
| Checks as follows" | | | |

B. Hewitt, a national bank examiner, reading as follows:

"First National Bank Kansas City Mo.
"National State Bank Stockton Kansas closed stop Withhold payment on all outstanding drafts stop Forward statement
"R. B. Hewitt,
"National Bank Examiner."

This telegram was received at the telegraph office in Kansas City at 9:07 a. m. on November 14, 1927. The time of the receipt of the telegram by the Kansas City Bank is not shown in the record.

The Stockton Bank did not open for business on November 14, 1927. On the same day, but after the telegram had been received from the national bank examiner, the Kansas City Bank charged the account of the Stockton Bank with the amount of the draft. On November 15 the Kansas City Bank charged back to its customers the Stockton Bank checks which they had deposited; and advised them that the Stockton Bank had closed.

Early in December, the Kansas City Bank reported to the receiver of the Stockton Bank that it had to the credit of the receiver the sum of $2,131.68; and on December 7 the bank paid this sum to the receiver. This amount did not include the amount of the draft which the Stockton Bank had sent to the Kansas City Bank.

On December 12 the Kansas City Bank recredited the accounts of its customers respectively with the amounts of the checks which had been originally credited to them on November 10, but which had been charged back on November 15. The bank, however, reserved the right to recharge the same.

When the receiver of the Stockton Bank received from the Kansas City Bank the amount of $2,131.68 he did not know that the bank had received the telegram of November 14 before it had actually charged on its books the draft of the Stockton Bank; nor did the receiver know that on November 15 the Kansas City Bank had charged back to its customers the checks on the Stockton Bank which they had deposited on November 10. These facts were learned by the receiver on December 15, and thereafter correspondence was had by the receiver with the Comptroller of the Currency and with the Kansas City Bank relative to the various transactions above mentioned and the resulting situation.

In this correspondence, one of the officers of the Kansas City Bank asserted the right of the bank to hold the amount of the draft $1,460.94, on the ground that the draft had been paid before the Kansas City Bank received notice of the suspension of the Stockton Bank; and said officer of the Kansas City Bank in said correspondence disclaimed any right of set-off.

On February 14, 1928, the receiver made formal demand on the Kansas City Bank for the payment of $1,460.94. The demand was refused, and the present suit followed.

The checks which the Kansas City Bank sent to the Stockton Bank on November 10, 1927, have never been returned to the Kansas City Bank, presumably because they had been turned over by the Stockton Bank to the respective drawers.

The trial court found the foregoing facts substantially, and held for the defendant, the Kansas City Bank; and judgment was entered accordingly.

Various contentions are made on this appeal by the appellant and appellee respectively. We do not find it necessary to determine or discuss all of them. In the view we take of the case, the vital questions are few.

The suggestion of the appellant that the Kansas City Bank, by recharging the checks to its customers, or by the remarks of one of its officers as to offset, has determined the rights of that bank as against the Stockton Bank and its receiver, we lay to one side, with the remark that such acts of the Kansas City Bank would not operate as an estoppel, for the clear reason that the receiver did not rely upon them to his prejudice; and the materiality of such acts would be confined to the bearing they might possibly have upon the relation existing between the two banks at and prior to the suspension of the Stockton Bank.

We also pass by the contention of appellee that the amount of the checks in question, $1,460.94, became a trust fund in the hands of the Stockton Bank. The contrary doctrine has become strongly entrenched in this court, and we see no reason for a change of position.

There was no augmentation of assets of the Stockton Bank, and hence the trust fund doctrine is not available. This rule is announced in the following cases in this circuit: Beard v. Ind. Dist. of Pella City (C. C. A.) 88 F. 375; Empire State Surety Co. v. Carroll County (C. C. A.) 194 F. 593; Mechanics & Metals Nat. Bank v. Buchanan (C. C. A.) 12 F.(2d) 891; Larabee Flour Mills v. First Nat. Bank (C. C. A.) 13 F.(2d) 330;

Hirning v. Fed. Reserve Bank of Mpls. (C. C. A.) 52 F.(2d) 382.

The crucial question, as we view the case, is whether the right of set-off existed in the Kansas City Bank at the time when it debited the account on its books of the Stockton Bank with the draft sent by that bank in payment of the checks theretofore transmitted to it by the Kansas City Bank.

We shall assume for the purposes of this case that a mutuality of debtor-creditor relation is a prerequisite to the right of set-off, although the necessity of such a relationship is contested by appellee. Did such a relation exist at the time the Kansas City Bank made the entry of the receipt of the draft on its books? The answer depends upon whether the Kansas City Bank owned the checks which it transmitted to the Stockton Bank.

These checks had been indorsed and deposited in the Kansas City Bank by its customers, who thereupon had been given credit therefor on the books of the bank. No restriction on the indorsements appears in the record.

■ In the absence of a special agreement to the contrary, "when paper is indorsed without restriction by a depositor, and is at once passed to his credit by the bank to which he delivers it, he becomes the creditor of the bank; the bank becomes owner of the paper, and in making the collection is not the agent for the depositor." Douglas v. Fed. Reserve Bank, 271 U. S. 489, 492, 46 S. Ct. 554, 556, 70 L. Ed. 1051; Burton v. United States, 196 U. S. 283, 297, 25 S. Ct. 243, 49 L. Ed. 482; Cuttell v. Fluent, 51 F.(2d) 974 (C. C. A. 8); H. & B. Beer v. Chickasha Nat. Bank, 26 F.(2d) 36 (C. C. A. 8); Security Nat. Bank v. Old Nat. Bank, 241 F. 1, 8 (C. C. A. 8); Morse on Banks and Banking (6th Ed.) § 289.

In the case at bar, appellant relies upon the provisions of the deposit slip (above set out) as constituting an agreement that the Kansas City Bank did not become the owner of the checks, but merely an agent for collection.

We think the provisions of the deposit slip are not open to such construction. The deposit slip was worded, and was intended to be worded, so as to cover a multitude of different conditions. One or more of the provisions might apply to a particular deposit or they might not. The first and second provisions contemplate that the bank *may* receive the item deposited either as agent or as owner. This alternative is not left entirely to the decision of the bank. If the depositor presents a check with the restrictive indorsement "for collection only," the bank cannot accept the check and claim to be its owner. But, if the depositor does not decide the matter by restrictive indorsement or by special agreement, the matter is still left open for decision by the bank, and it may determine whether it will accept the particular item as agent or as owner. Absent a special agreement, the decision of the bank is determined by the method it employs in handling the item, and by the general rule of law above quoted. Absent such special agreement, the passing by the bank of the item at once to the credit of the depositor is a decision by the bank, and it becomes owner of the item.

■ Provisions 3 and 5 of the deposit slip, upon which appellant places its chief reliance, are not determinative on the question of ownership. Those provisions simply outline a method which the bank may pursue and exact summary payment from the indorser in case the item is uncollected or uncollectible. Provisions similar in effect were held not determinative of the question of ownership in the Douglas and Burton Cases, supra.

There being no restrictive indorsement on the checks and no special agreement controlling the matter of ownership, we are of opinion upon the facts disclosed that the general rule of law above stated governed, and that the Kansas City Bank became the owner of the checks which it thereafter transmitted to the Stockton Bank.

■ Since the Kansas City Bank was the owner of the checks, it follows that, the moment the Stockton Bank collected them by simply making proper entries on its books, there arose between the Stockton Bank and the Kansas City Bank the mutual relation of debtor-creditor, and the right of set-off also arose in the Kansas City Bank. Storing v. First Nat. Bank, 28 F.(2d) 587 (C. C. A. 8); United States Fid. & G. Co. v. Wooldridge (C. C. A.) 295 F. 847, affirmed 268 U. S. 234, 45 S. Ct. 489, 69 L. Ed. 932, 40 A. L. R. 1094. This right of set-off coming into existence at the moment the Stockton Bank made the collection was not defeated by subsequent insolvency and notice on the part of the Stockton Bank. Storing v. First Nat. Bank, supra. The right of set-off was properly exercised by the Kansas City Bank.

It follows that the judgment of the trial court should be affirmed. It is so ordered.