**BRENNAN v. HOLDEN et al.**
No. 3773.

District Court, D. Massachusetts.
July 17, 1933.

Sawyer, Hardy, Stone & Morrison and Kenneth C. Parker, all of Boston, Mass., for plaintiff.

Raymond M. Sullivan and Edward R. Hale, all of Boston, Mass., for defendants Arthur Guy, Joshua B. Holden, and others.

Scaife, Robbins, Fullerton & Noyes, E. Dwight Fullerton, Parkman, Coughlin & Hannon, and John C. Coughlin, all of Boston, Mass., for defendant Herbert Pearson.

BREWSTER, District Judge.

In this bill of complaint the plaintiff seeks to enjoin the defendant Pearson, as receiver of the Federal National Bank (hereinafter referred to as the bank), from prosecuting an action at law upon a check for $2,554.50 drawn by other defendants, copartners doing business as Lapham, Potter & Holden (hereinafter referred to as the brokers). There is no diversity of citizenship between plaintiff and the defendants other than Pearson, consequently this court has jurisdiction only so far as the controversy is involved in the winding up of the affairs of a national bank. It cannot in this proceeding adjudicate the equities between the plaintiff and the drawers of the check. The receiver in a law action pending in this court has sued to recover from the brokers the amount of the check. Both the law action and this equity suit were tried together; the parties consenting that this controversy may be disposed of in this proceeding. If I find and rule that the plaintiff is entitled to an injunction enjoining the receiver from asserting any rights in the check, it will necessarily follow that the receiver must fail in his law action, and, in that event, I understand that Lapham, Potter & Holden stand ready to satisfy the plaintiff's claim. If, on the other hand, the receiver is entitled to judgment against the brokers in the action at law, this bill is to be dismissed. The single question, therefore, which calls for decision is whether Pearson, as receiver of the bank, is entitled to recover upon the check, and I proceed to a consideration of that issue.

### Statement of Facts.

(1) The plaintiff requested the Lawrence Trust Company (hereinafter called the trust company) to sell for him certain shares of stock, and to that end delivered certificates representing the stock to the trust company which, in turn, forwarded them to the brokers, doing business in Boston, with instructions to sell the shares and credit the trust company's "Commercial Department Account in the Federal National Bank of Boston, covering proceeds." The plaintiff had nothing to do with selecting the broker, nor did he authorize any instructions to the broker respecting transmission of the proceeds of the sale.

(2) In accordance with these instructions, the brokers sold the shares and drew their check, dated December 14, 1931, for $2,554.50, the amount of the net proceeds of the sale, payable to the "Federal National Bank of Boston A/C Lawrence Trust Co. Commercial Account." On the morning of the same day, the check was taken to the bank and deposited to the account of "Lawrence Trust Co. Comm'l Acct." The deposit slip accompanying the check contained the following terms: "In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment, in cash or solvent credits. * * * This Bank * * * may send items, directly or indirectly, to any bank, * * * and accept its draft or credit as conditional payment in lieu of cash: It may charge back any item at any time before final payment, whether returned or not. * * * *" The deposit slip was one of those generally used by depositors in the bank, and was furnished by the bank to its customers. At the time of the deposit nothing occurred which would modify or operate as a waiver of any of the above terms.

(3) Upon receipt of the deposit, the bank at once entered it as a credit upon the commercial account of the trust company, upon which the trust company drew its checks in excess of all sums deposited that day. The books of the bank show that on December 14 there was deposited $24,820.28, including the brokers' check in question. On the same day it charged to the commercial account of the trust company $28,026.47, paid to the Federal Reserve Bank of Boston to cover checks drawn upon that account which were cleared through the Federal Reserve Bank. The commercial account of the trust company had also been debited with other checks presented and paid, totalling over $44,000. The transactions on December 14, after the check of brokers had been deposited, involved debits in excess of the credits.

(4) Since early in December, 1931, the commercial department account of the trust company in the bank was overdrawn, and on December 10, 1931, the overdraft was nearly $84,000, when on that day the bank loaned to the trust company $100,000. Two days later the commercial account was again overdrawn, and on December 14 the overdraft before the close of the banking hours had increased to

over $58,000. There was other indebtedness owing by the trust company to the bank, but it is not necessary to state the exact amount due.

(5) On the morning of December 15, 1931, the Federal National Bank did not open for business, and on the same day the defendant Pearson was appointed receiver by the Comptroller of Currency, and since that time the bank has been in the process of liquidation.

(6) I find that the Federal National Bank did not at any time change its position in reliance upon or upon the faith of the check in question. No credits were given or advances made on the faith or expectation that the check of the brokers would be paid. The bank would have extended to the trust company all the credits in fact extended by it on December 14, regardless of the deposit of the check.

(7) The check in question was drawn on the National Rockland Bank of Boston, and, when presented, payment was refused, the makers in the meantime having stopped payment.

### Conclusions of Law.

■ The equities of the case are strongly in favor of the plaintiff. He had intrusted his shares of stock with the trust company which had undertaken to sell them and account to him for the proceeds. The stock was sold and, before the proceeds had been received by the plaintiff, the bank which had received the brokers' check had ceased to do business, and payment of the check had been stopped. The proceeds are now in the hands of the brokers, who are ready to pay them to the plaintiff. They should be permitted to do so unless the receiver can establish a right superior to the equities of the plaintiff. It is the contention of the receiver that the bank, as holder for value, in due course acquired title to the check, and, as such owner, may now recover against the drawers the amount of it. The check was drawn payable to the Federal National Bank of Boston A/C Lawrence Trust Co. Commercial Account. While the Federal National Bank was payee, it was named only for the purpose of receiving the item for the account of the trust company. It is clear that it gave no consideration to drawers, and the rule that a payee may be a holder for value (Russell v. Bond & Goodwin, Inc., 276 Mass. 458, 177 N. E. 627; Boston Steel & Iron Co. v. Steuer, 183 Mass. 140, 66 N. E. 646, 97 Am. St. Rep. 426) has no application. The solution of the questions presented must be approached as if the check were drawn payable to the trust company and indorsed and deposited by that company upon the terms of the deposit slip in evidence.

■ The courts are not in accord upon some of the legal propositions involved, but I think all agree that, if the bank received the check for collection, its authority to collect ended when it ceased to function as a bank. Salem Elevator Works v. Commissioner of Banks, 252 Mass. 366, 148 N. E. 220, 222.

It is an implied condition of the contract of principal and agent that the "banking agent for collection of checks shall continue to do business in the customary way in order that the agency may continue. If it ceases to do so, the agency to collect the check, to appropriate the proceeds to itself and to substitute for the money its own liability as for a debt, has come to an end." Rugg, C. J., in Salem Elevator Works, Inc., v. Commissioner of Banks, supra.

This case turns upon the question whether the bank received the check for collection or whether it became the purchaser so that title to it passed at once to the bank when deposited.

■ The claim is made on behalf of the bank that it became a purchaser of the paper and that it did not assume any agency for collection. This claim is predicated largely upon the undisputed fact that the check was at once credited to the commercial account of the trust company against which the trust company was permitted to draw, and against which, in fact, it did draw in amounts in excess of the total deposits of the trust company made on December 14. I have found as a fact that the bank did not extend credit upon the strength of the item in question. Its dealings with the trust company were in no way influenced by the deposit of the check of the brokers. If the test is, as was intimated in Bank of the Metropolis v. New England Bank, 1 How. 234, 11 L. Ed. 115, whether the bank without notice of the rights of the true owner and regarding the depositor as the true owner extended credit or suffered balances to remain in the hands of the bank from which it received the paper, then the Federal National Bank has failed to meet that test. This case is easily distinguished from Latzko v. Equitable Trust Co., 275 U. S. 254, 48 S. Ct. 60, 72 L. Ed. 267, cited by the receiver. In that case, while the check was drawn payable to the bankers for the account of the plaintiff, the dominant purpose of the deposit with the bankers was to establish a credit in favor of the plaintiff against which he could draw. In the case at bar, the dominant purpose was to transmit funds belonging to the plaintiff.

288

■ Reliance is placed upon the rule frequently applied in the courts that: "Ordinarily, where paper is indorsed without restriction by a depositor and is at once placed to his credit by the bank, the inference is that the bank has become the purchaser of the paper and in making the collection is not acting as the agent of the depositor." Mr. Justice Stone in Equitable Trust Company v. Rochling, 275 U. S. 248, 252, 48 S. Ct. 58, 59, 72 L. Ed. 264. But this inference yields to an express agreement of the parties that the bank shall act as agent for collection. National Bank of the Republic v. Millard, 10 Wall. 152, 155, 19 L. Ed. 897; Federal Reserve Bank v. Malloy, 264 U. S. 160, 164, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261; Union Electric Steel Co. v. Imperial Bank of Canada (C. C. A.) 286 F. 857, 861; Texas & P. R. Co. v. Pottorff (C. C. A.) 63 F.(2d) 1; Nomland v. First Natl. Bank of Kansas City, Missouri (C. C. A.) 64 F.(2d) 399.

In Massachusetts the rule is not applied if it appears that the bank informed its customers by notices upon the passbook or deposit slip that it accepted deposits of commercial paper only as an agent for collection. Taft v. Quinsigamond National Bank, 172 Mass. 363, 52 N. E. 387; Salem Elevator Works v. Commissioner of Banks, supra.

■ The intention of the parties is the controlling factor, In re Ruskay (C. C. A.) 5 F.(2d) 143, and the deposit slip constitutes material evidence of what that intention was, King v. Bowling Green Trust Co., 145 App. Div. 398, 129 N. Y. S. 977.

■ In the case at bar, the deposit slip purported to state the terms and conditions upon which the deposit was received by the bank. In unequivocal language the bank gave notice to its depositor that "in receiving items for deposit * * * this bank acts *only* as depositor's collecting agent." (Italics mine.) It also tells its customers that all items are credited subject to final payment in cash or solvent credits, and that it may charge back at any time any item before final payment whether returned or not. I am aware that acceptance of deposit subject to final payment alone is not enough to overcome the inference that the bank purchased the paper deposited and credited to depositor's account. City of Douglas v. Federal Reserve Bank, 271 U. S. 489, 46 S. Ct. 554, 70 L. Ed. 1051. Nor will the inference be met by the reservation of the right to charge back the item. Dickson v. First National Bank of Buffalo, Okl. (C. C. A.) 26 F.(2d) 411; Union Electric Steel Co. v. Imperial Bank of Canada, supra.

But both of these provisions are more compatible with the relationship of principal and agent than with that of debtor and creditor, and, when they supplement a positive disclaimer by the bank of any intention to act in any capacity other than that of agent for collection, the inference relied upon is not warranted. The bank cannot complain if we accept as final its announced purpose to act only as agent when it has been shown that nothing occurred to take the item in question out of the usual course of its banking business, and especially when, as in this case, it is quite apparent that neither the trust company nor the bank can in justice or equity assert a claim of ownership to the proceeds of the sale of plaintiff's stock.

I rule, therefore, that the defendant Pearson is not entitled to recover upon the check given by the brokers and now held by the bank, the agency of the bank to collect having ended, and therefore it follows that plaintiff is entitled to a final decree perpetually enjoining the defendant Pearson from asserting any right in and to said check, and, according to the understanding of the parties, a judgment will be entered for defendant in the pending law action.