## JOHNSON v. FIRST NAT. BANK & TRUST CO. OF TULSA.

### No. 1956.

District Court, N. D. Oklahoma.
Nov. 13, 1934.

Reily & Reily, of Shawnee, Okl., for plaintiff.

J. C. Pinkerton, Hess Crossland, and O. L. Lupardus, all of Tulsa, Okl., for defendant.

FRANKLIN E. KENNAMER, District Judge.

At the time it closed its doors the Shawnee National Bank had a deposit with defendant, the amount of which is undisputed. The question presented is whether defendant is entitled to an offset of $2,216.89, the sum of two checks payable to defendant's order, drawn on the Shawnee Bank, mailed to that bank by defendant and by the drawee marked "paid" and charged to the accounts of the drawers, and for which no remittance was made to defendant. The drawers had deposits with the Shawnee Bank in amounts sufficient to cover these checks.

Of these checks, one was drawn by Oklahoma Natural Gas Corporation, for $2,000, and, with other checks, deposited by that corporation in its account with defendant. A printed notice in the depositor's passbook stated, in part, that:

"Items not on this bank received for collection or credit at depositor's risk and not subject to check until actual payment therefor is received * * * should any item be not paid or any bank fail to remit proceeds, or issue paper therefor which is dishonored, any credit given may be cancelled and this bank have no further duty as to such item or paper * * * items may be sent direct to banks on which drawn. * * * "

The deposit slip used by the gas corporation contained provisions of like import.

The undisputed evidence is that notwithstanding these provisions, the gas corporation had the right to draw checks up to the full amount credited to it on defendant's books; that the defendant had the right to use, in its general banking business, the

checks deposited by the gas corporation; that the parties intended defendant should have title to the check; and that generally the course of dealing between them was without reference to the printed matter in the passbook and the deposit slip.

The other check was mailed to defendant by the First National Bank of Maud in settlement of a balance arising out of its transactions with defendant.

■ Defendant took title to both checks. The printed matter on the deposit slip and passbooks yields to the actual agreement of the parties as evidenced by their course of conduct. The bank's right to charge back uncollected items does not prevent or hinder the passing of title to it. Douglas v. Federal Reserve Bank, 271 U. S. 489, 46 S. Ct. 554, 70 L. Ed. 1051; Burton v. U. S., 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482; Nomland v. First National Bank of Kansas City, Mo. (C. C. A. 8) 64 F.(2d) 399; Holloway v. Dykes (D. C. Okl.) 29 F.(2d) 430. Compare Equitable Trust Co. of New York v. Rochling, 275 U. S. 248, 253, 48 S. Ct. 58, 72 L. Ed. 264, 266; Dickson v. First National Bank of Buffalo, Okl. (C. C. A. 8) 26 F.(2d) 411.

■ The checks sent to the Shawnee Bank were "collected" when that bank charged them to the accounts of the drawers and marked them "paid." State ex rel. Percy v. Cox, 325 Mo. 938, 30 S.W.(2d) 46; Nineteenth Ward Bank v. First National Bank, 184 Mass. 49, 67 N. E. 670. It follows that the relationship between the defendant and the Shawnee Bank was that of debtor and creditor. People's Nat. Bank of Hot Springs v. Moore (C. C. A. 8) 25 F.(2d) 599; 6 Michie on Banks & Banking (Permanent Ed.) p. 58. Defendant contends that the special directions in its cash letter transmitting the checks prevented the relationship of debtor and creditor from arising and gives it a preferred claim or a claim to a trust fund as against money in the Shawnee Bank. In Spokane & Eastern Trust Co. v. U. S. Steel Products Co. (C. C. A. 9) 290 F. 884, that result was reached, but there was an augmentation of assets. In Allied Mills, Inc., v. Horton ( C. C. A. 7) 65 F.(2d) 708, 90 A. L. R. 1, where, as in the case at bar, there was no augmentation of assets, special instructions to the collecting bank were held not to make the collecting bank a trustee. Had the Shawnee Bank obeyed instructions and segregated funds or remitted cash, the result might be different, but the instructions were not followed, and the fact the Shawnee Bank,

at the time it received the checks, and at the time it closed its doors a few days thereafter, had on hand some $20,000 in cash is of no help to defendant in establishing a preferred claim or a claim to a trust.

■ Indeed, defendant admits that there was no augmentation of assets and that under the rule announced by the federal courts no trust can be established because no new money was placed in the Shawnee Bank [Larabee Flour Mills v. First National Bank of Henryetta, Okl. (C. C. A. 8) 13 F.(2d) 330; Ellerbe v. Studebaker Corporation of America (C. C. A. 4) 21 F.(2d) 993; Larabee Flour Mills Co. v. First National Bank of Dublin, Ga. (D. C.) 52 F.(2d) 146; City of Miami v. First National Bank of St. Petersburg, Fla. (C. C. A. 5) 58 F.(2d) 561; First Nat. Bank v. City of Miami, Fla. (C. C. A.) 69 F.(2d) 346], but it contends that, since the entire transaction took place in Oklahoma, the case should be governed by the rule announced by the Supreme Court of Oklahoma in First State Bank of Bristow v. O'Bannon, 130 Okl. 206, 266 P. 472, and Farmers' State Bank of Marshall v. Mewherter (Okl. Sup.) 33 P.(2d) 1091, holding that circumstances similar to those in this case make the collecting bank a trustee, which is contrary to the federal rule. The defendant is in error as to the law. The question presented must be decided by resort to the principles of general commercial law as announced by the federal courts. The state law is not controlling. Dickson v. First National Bank of Buffalo, Oklahoma (C. C. A. 8) 26 F.(2d) 411; Spokane & Eastern Trust Co. v. U. S. Steel Products Co. (C. C. A. 9) 290 F. 884.

■ After the Shawnee Bank closed its doors, defendant filed a claim based on the two items claimed herein as a set-off. Over its protest and objection the Maud bank was charged back with the amount of its check, and the evidence shows that bank still claims defendant owes it the amount of the charge back. The gas corporation paid defendant $2,000 to prevent a charge back to its account, but under agreement that no rights were waived. Plaintiff asserts that by these transactions defendant lost its claim against the Shawnee Bank and that if any rights against that bank exist, they must be asserted by the drawers of the checks. The contention is plausible. The fallacy in plaintiff's reasoning, as I see it, consists in this: Defendant had title to the checks. It forwarded them to the Shawnee Bank, which marked them "paid" and charged them to the drawer's accounts with it. Thereupon the Shaw-

nee Bank became defendant's debtor. It has not, and cannot return the checks to defendant, and defendant cannot return them to the drawers. Under the circumstances defendant's charge back was conditional or provisional, and that defendant may have protected itself against loss under its guaranty from third persons does not destroy its claim against the Shawnee Bank. It would seem clear when the Shawnee Bank received the checks drawn on the accounts of its customers and accepted said checks and charged them on the books to its customers as paid items, that the First National Bank & Trust Company, defendant herein, at the moment the Shawnee Bank accepted and charged said items to their customers on their books, would have been well within its rights to debit or charge the account of the Shawnee Bank on deposit with the defendant bank with the amounts involved. It is an ordinary banking transaction to follow such a course of conduct. It is obvious it was unnecessary for the Shawnee Bank to remit to the First National Bank & Trust Company the actual cash on such items, when it had sufficient credit or funds on deposit with the transmitting bank of the items to cover the items. Such transactions are closed by proper charges on the books of the banks. The First National Bank & Trust Company having the right, when the items were accepted and charged on the books of the Shawnee Bank as paid, to charge the items on its books to the Shawnee Bank, it should not have charged them back against the customers depositing the items, but should have debited the Shawnee Bank on its books with the amounts involved. It is not shown that the Shawnee Bank or its receiver has changed its position or will suffer any loss because of the manner in which defendant proceeded. See Russo-Chinese Bank v. National Bank of Commerce, 241 U. S. 403, 418, 36 S. Ct. 652, 60 L. Ed. 1065; Nomland v. First National Bank of Kansas City, Mo. (C. C. A. 8) 64 F.(2d) 399. The rights of the parties with respect to a set-off became fixed at the moment of insolvency of the Shawnee Bank and are unaffected by conditions arising thereafter. Dakin v. Bayly, 290 U. S. 143, 54 S. Ct. 113, 78 L. Ed. 229, 90 A. L. R. 999. The Supreme Court has said that no mere bookkeeping can change the actual status of the parties or destroy rights which arise out of the real facts of the transaction. Commercial National Bank of Pennsylvania v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 37 L. Ed. 363.

Plaintiff may have judgment for $4,908.-68, less the amount of the set-off, without interest. The costs are assessed against plaintiff.

Counsel will prepare a decree accordingly.

This opinion has been submitted to the Honorable EDGAR S. VAUGHT, United States District Judge, and I am authorized to state that he concurs in the views herein expressed.