8344

FIRST NATIONAL BANK OF CHILLICOTHE v. McSWAIN.

1. DAMAGES.—ATTORNEY'S FEES for procuring dissolution of an attachment on motion should not be allowed as damages from attachment to the person owning the property.

2. ESTOPPEL—ATTACHMENT.—When one has the property of another attached to answer the debt of a third party, such other party is not estopped from suing him for damages for selling his property for less than its value by giving the sheriff notice, after sale under attachment, that the property was his and demanding the proceeds.

3. IBID.—Nor is he estopped by standing by and making no objection or claim until after sale with knowledge of the attachment, advertisement and sale.

4. TITLE—BILL OF LADING—ISSUES.—Possession of bill of lading transferred to holder is *prima facie* evidence of title to the property and in absence of rebutting evidence there is no issue for the jury, as nothing done by the transferrer after transfer could effect the title passed.

5. VALUE—ISSUES.—When corn is proved to be worth seventy-five cents on the market and to have been sold for less, there is no issue for the jury as to whether it brought its value.

Before GAGE, J., Laurens, November term, 1911.   Affirmed.

Action by First National Bank of Chillicothe against H. L. and L. F. McSwain.   Defendants appeal on the following exceptions:

I. "That the presiding Judge erred in refusing defendants' motion for nonsuit on the ground that it appeared that plaintiff had intervened in another action wherein H. L. & L. F. McSwain are plaintiffs and Adams Grain and Provision Company is defendant by filing notice of a claim to the proceeds of the sale of the corn, which claim was denied, thus making in said action the issue of such proceeds, and having accepted such proceeds, in such other action, plaintiff is estopped to say it did not consent to such conversion, and that such intervention into said other action is an election of

remedies barring the present action raising the same issue, and having so intervened, plaintiff here is bound by all proceedings in the other action, such as the sale of the corn and its price at said sale, and that the present action is barred by appearance in the other pending action, and the order of nonsuit on this ground should have been allowed, and made.

II. "The bill of lading being attached to draft on consignee, Adams Grain and Provision Company, was only *prima facie* evidence of an intention by Standard Cereal Company to reserve title, and the only evidence as to the contract and real intention of Standard Cereal Company and Adams Grain and Provision Company being the testimony of Mr. Selden who testifies that upon receipt of notice that the corn had been accepted by his customer at Cross Hill, his company was to take up the draft and forward bill of lading to Cross Hill, and it appearing that notice of such acceptance of corn at Cross Hill was telegraphed to Adams Grain and Provision Company on February 28, and it not appearing that said Adams Grain and Provision Company had any notice of any attachment till March 7, 1911, and said Adams Grain and Provision Company having exercised full control and dominion over said car of corn, such as allowing full inspection, the Court should leave it to the jury to say what was the contract between Standard Cereal Company and Adams Grain and Provision Company, and to say whether or not it was complete on acceptance of corn by customer, and whether or not title to said corn then vested in the Adams Grain and Provision Company, and the Court erred in solving all such questions of fact against defendants.

III. "Reservation of title by shipper being a question of intention of seller and purchaser, the plaintiff bank claiming only to have bought the draft and to hold bill of lading only as collateral security, Adams Grain and Provision Company being consignee in this bill of lading, the Court erred in not holding that the bank dealt in the bill of lading as collateral

subject to agreement, contract, and intention of consignor
and consignee, and the Court erred in not leaving these
issues of fact under the testimony to the jury.

IV. "That the presiding Judge erred in directing a ver-
dict, thus violating the constitutional provision against
charging on the facts, when the amount of damage and the
value of the corn was in dispute, since a fair sale in a town
of twelve or fifteen stores, after due adversitement, is as
good if not higher evidence of value, as a mere recollection
of an opinion as to the prevailing contract price at the time,
and it was error to take this issue of fact from the jury,
when under such conflict of parole testimony, more than
one inference as to the value of the corn, might reasonably
be drawn.

V. "That the presiding Judge erred in taking from the
jury the issue of estoppel, when it appeared from the testi-
mony that plaintiff knew on March 6, 1911, that the car
of corn had been attached, and on said March 6, 1911, tele-
graphed their attorneys, Ferguson, Featherstone & Knight,
to protect the interests of plaintiff, and that said attorneys
knew said corn had been ordered sold as perishable property,
and lived in the same town with the sheriff, who, after
twenty-four hours' advertisement, sold same on March 8.
1911, and nevertheless plaintiff's said attorneys failed to
give said sheriff or the defendants herein, or their attorneys,
any notice whatever, and allowed said corn to be sold as the
property of Adams Grain and Provision Company, and hav-
ing stood silent and having thus consented to a conversion of
the corn into cash, plaintiff should be estopped to say that
said corn was worth more than the price brought at such
public sale, and this issue should have been submitted to the
jury.

VI. "It is respectfully submitted that the presiding Judge
erred in not leaving to the jury the issue under proper
instructions as to whether or not the plaintiff bank by
appearing and intervening in the former suit in attachment,

and by accepting and receipting for the proceeds of the sale of the corn attached and sold as perishable property, elected as its proper remedy, its relief in such former action, and whether or not plaintiff bank is now estopped to prosecute this action for trespass on the case. In other words, to claim and receipt for the money representing the corn is inconsistent with a subsequent claim, as set up in this action, that the corn of plaintiff bank was attached and sold unlawfully. Plaintiff bank is not entitled to both the proceeds of its corn, and also to an action for damages for converting its corn.

VII. "It is further respectfully contended that the presiding Judge erred in not holding that the sale of perishable property in judicial proceeding is for the benefit of all persons interested in the property, and that the price for which such perishable property is sold is the true measure of its value. And it was error for the presiding Judge to refuse nonsuit which was made upon the ground that since the plaintiff bank knew that the car of corn in question had been attached, and knew that the corn had been ordered to be sold by the Court, and instructed its attorneys to protect its interests, and since said attorneys knew that the said car of corn was to be sold, and since it was sold without any objection or protest by the plaintiff bank, or their attorneys, and since the plaintiff bank, by their attorneys, did appear in said action, and did claim the proceeds of the corn, to wit, the money into which the corn had been converted by order of Court, and the Court, and the plaintiff bank having receipted for this money, and the claim of plaintiff bank to the money having been traversed by the defendants in this case, the plaintiff bank was estopped to seek another remedy for its alleged wrong, and should have been held to have elected its remedy by intervening in the suit in which attachment was issued, and having so intervened, and an issue of title having been made up, plaintiff bank was bound by the record of the case as it found it, and was bound by all prior proceedings,

and motion for nonsuit upon this ground, should have been sustained, and an order of nonsuit passed."

*Messrs. F. P. McGowan* and *J. J. McSwain,* for appellants, cite: *Plaintiff's remedy:* 53 S. C. 110; 32 S. C. 319; 76 S. C. 472; 2 Am. Dig., sec. 302; 40 S. W. 762; 75 S. W. 398. *Sale best evidence of value:* 13 Ency. 543. *Attorney's fees item of damage:* 19 S. C. 223; 19 S. C. 230. *Transferee has no better title than transferer:* 6 Cyc. 424; 101 U. S. 557; 9 Rich. 325; 4 S. C. 381; 49 N. E. 97. *Party claiming property may intervene:* 4 Cyc. 724, 727, 731; 43 S. C. 176; 25 S. C. 467; 32 S. C. 319. *Intervenor is bound by orders in case:* 88 S. C. 1; 4 Cyc. 754; 101 Mass. 259. *Having elected, is estopped to assert another remedy:* 4 Cyc. 736; 15 Cyc. 260; 7 Ency. P. & P. 364; 23 Mo. 34; 9 Ore. 93; 13 Neb. 518; 14 N. W. 474. *Public auction is best evidence of value:* 36 C. C. A. 135; 27 At. 1057; 109 S. W. 881; 53 L. R. A. 867; 85 S. W. 401.

*Messrs. Ferguson, Featherstone & Knight,* contra, cite: *Right of a third party to regain possession of attached property:* 53 S. C. 110; 39 Pa. St. 50; 70 Ia. 27; 62 Mo. 17; 21 Am. R. 407; 26 Ill. App. 309; 6 Gill. 17. *Bill of lading is a quasi negotiable instrument:* 25 S. C. 222; 82 Am. St. R. 147; 72 S. C. 454; 82 S. C. 471; 38 Am. Dec. 409; Dan. Neg. Inst., secs. 1731, 1734; 25 S. C. 225. *Attorney's fees should not be allowed as damages:* 19 S. C. 223, 230; 39 S. C. 427; 68 Am. R. 273. *Sale not conclusive proof of value:* 60 S. C. 108; 46 S. C. 199.

October 17, 1912. The first opinion was delivered by

MR. JUSTICE WATTS. In February, 1911, F. M. & J. B. Pinson, merchants, doing business at Cross Hill, S. C., ordered from Adams Grain and Provision Co., a corporation, located at Richmond, Va., a carload of corn.

The Virginia corporation bought the corn from Standard Cereal Co., grain dealers at Chillicothe, Ohio, which company shipped the same to Adams Grain and Provision Co., at Cross Hill, S. C. "Order notify F. M. & J. B. Pinson."

The Standard Cereal Company drew a draft on Adams Grain and Provision Company, for three hundred eighty-nine and 20-100 dollars, the amount due for the purchase money of the corn, which draft, with the bill of lading attached, was sold to First National Bank of Chillicothe, the plaintiff.

When the car of corn arrived at Cross Hill, and before the draft was paid, the defendants brought suit against the Adams Grain and Provision Co. and had the corn attached as the property of said company.

The said company entered a special appearance in said suit and sought to have the attachment dissolved, upon the ground that the corn was not its property, but that of the plaintiff herein, and also to set aside the service of process in said action.

See case of *H. L. & L. F. McSwain* v. *Adams Grain and Provision Company,* now before this Court.

Under an order passed in said cause, to which the plaintiff herein was not a party, the car of corn was sold, as perishable property, and brought fifty-eight (58) cents per bushel—the original sale, to the Pinsons having been at seventy-five (75) cents per bushel.

The sale, by the sheriff, under the order of the Court, was made on March 8, 1911.

On March 18, 1911, the plaintiff bank, which was the owner of the draft, with bill of lading attached, notified the sheriff and the attorneys for the McSwains, that it was the owner of the corn and that it demanded the possession thereof.

The McSwains, the plaintiffs in the attachment proceedings, failed to give the bond, required by the statute, and on April 8, 1911, the sheriff paid to the attorneys for the bank,

two hundred thirty-eight and 49-100 dollars, which amount represented the. proceeds of the sale of the corn.

The receipt given to the sheriff sets out: "This receipt is simply on account and is not accepted in full of the amount due it."

After the service of the notice of claim of ownership, by the bank, upon the attorneys for the McSwains, the attorneys for the McSwains served upon the bank's attorneys what they designated as a "Notice of Contest," in which notice was given that they contested the claim of the bank, as to the ownership of the corn; that they would give the bond required by law, and that the bank would be required to file security for costs, etc. But, as before stated, the bond was not given.

Thereafter the plaintiff bank brought this action, setting forth, in substance, the foregoing facts, alleging that the defendants illegally and unlawfully took possession of and sold its property; that the defendants acted wantonly and wilfully, in so doing; that it was forced to employ counsel to vacate the attachment, and to secure the proceeds of sale from the sheriff and demanding judgment against the defendants for the sum of five hundred dollars.

The cause was heard before Judge Gage, and a jury, at the November term of the Court of Common Pleas, for Laurens county.

At the commencement of the trial, the plaintiff notified the Court that it would withdraw the allegations of the complaint, upon which it sought to recover punitive damages and would only ask for actual damages.

The trial resulted in verdict against the defendants (directed by the Court), for one hundred forty-two and 25-100 dollars, the difference between fifty-eight (58) cents per bushel, which the corn brought, at sheriff's sale and seventy-five (75) cents per bushel, the actual value.

From judgment, for said amount, duly entered, both plaintiff and defendants appeal to this Court.

The plaintiff appeals upon one ground, viz.: That the Circuit Judge erred in not including in the judgment the sum of twenty ($20) dollars, paid by the plaintiff to attorneys, for professional services, in vacating the attachment on the proceeds of sale and in securing said amount from the sheriff.

The defendants appeal upon various grounds set out in the record, which will be, hereafter considered.

We will first consider plaintiff's exception:

The defendants, through the sheriff, as their agent, seized and took possession of plaintiff's property.

Because of such seizure, which the Court holds herein to have been illegal and unlawful, the plaintiff was forced to employ counsel to procure a dissolution of the attachment and get possession of its property, in the hands of the sheriff. For the services thus rendered, the attorneys charged, and the plaintiff paid the sum of twenty ($20) dollars.

It must be borne in mind that these services were not rendered in defending the suit upon its merits, but solely in freeing plaintiff's property from the lien of the attachment, illegally put there by the defendants.

Under these circumstances, we hold that the amount paid to the attorneys was a proper element of damage, sustained by the plaintiff and recoverable in this action.

In an exhaustive note to *Tisdale* v. *Major,* 68 Amer. St. Reports, 273, Mr. Freeman goes into the question very thoroughly and shows that the great weight of authority is in accord with the above holding.

In *Livingston* v. *Exum,* 19 S. C. 229, it was held that attorney's fees paid in procuring a dissolution of an injunction could be recovered from the plaintiff.

In *Hill* v. *Thomas,* 19 S. C. 230, the same doctrine was laid down.

See, also, *Moorer* v. *Andrews*, 39 S. C. 427, 17 S. E. 948, where the principle laid down in these cases was approved and followed.

True, in these cases, the fees were allowed as damages, for procuring the dissolution of injunctions; but in principle, there is no difference.

In the one case a plaintiff illegally ties up defendant's property by injunction,—in the other, by attachment.

It must be borne in mind, however, that we hold that such fees are only allowable, not for procuring a dissolution of injunction, or attachment, by a fight on the merits, but by motion, or otherwise, before a trial on the merits, is had.

The plaintiff's exception is sustained.

We will now consider the exceptions of the defendants:

The first exception complains that the Court below erred in refusing the motion for nonsuit, upon the ground that plaintiff's notice to the sheriff, claiming the property attached, in effect, made the plaintiff a party to the attachment suit; that plaintiff thereby consented to the sale of the corn, is now estopped to say that it did not consent, and that when the plaintiff receipted the sheriff for the proceeds of sale, on account, such payment precludes and estops plaintiff from bringing this action.

In other words, defendant's position, in effect is that if A levies upon and sells the property of B, in a suit against C and B notifies the sheriff and A that he claims the property and A concedes that he has had sold the property of the wrong person, and B accepts the proceeds of sale, in part payment, that he is precluded from holding A accountable for the damages which he has sustained by reason of the illegal levy and sale.

We cannot hold any such doctrine. The contrary is the law. See *Dudley & Caston* v. *Green*, 46 S. C. 202, 24 S. E. 186.

Again, the statute (sec. 255a, of the Code, 1902) relied upon by the defendant, when correctly construed, is against the view contended for by defendants.

It expressly provides that when the property of some person other than the defendant, is attached, such person can come in and give notice and assert his title.

If the plaintiff contests the rights of such third person and, within the time therein prescribed, executes to such third person a bond, to indemnify him against loss, in case the plaintiff loses, an issue shall then be made up, to try the title to the property.

If the plaintiff fails to give the bond, he concedes the right of such third person to the property. *Ford* v. *Calhoun,* 53 S. C., 110, 30 S. E. 830.

There was never any intervention on the part of the plaintiff in the attachment suit and the plaintiff was not bound by any of the orders passed therein.

In this connection defendant's fifth, sixth and seventh exceptions will be considered.

The fifth complains that the Circuit Judge erred in not submitting the issue of estoppel to the jury, when it appeared that plaintiff knew, on March 6th, that the corn had been attached and on said day telegraphed its attorneys to protect its interest; that said attorneys knew that the corn had been ordered sold, as perishable property; that the attorneys lived in same town with sheriff, who after twenty-four hours' advertisement, sold same on March 8th; that the attorneys failed to give sheriff or defendants notice of plaintiff's claim, and that, having stood by and thus consented to a conversion of the corn, into cash, plaintiff should be estopped to say that the corn was worth more than it brought at the sale, and from recovering more than the proceeds of sale.

The record shows that the order of sale was passed on March 4th; that plaintiff's attorneys consented to the sale, as attorneys for Adams Grain and Provision Co.; that the

attorneys did not, at that time, represent the plaintiff; that they were first wired to by the plaintiff to look after its interest on March 6th. The sale was made on March 8th.

We cannot very well see how, under these circumstances, there was any issue of estoppel to submit to the jury.

Admitting all these facts, what was there in the conduct of plaintiff, or its attorneys, to create an estoppel? We confess that we can see nothing.

If the plaintiff, has the sheriff, as his agent, to seize the property of a third person, not a party to the suit, the plaintiff assumes the risk and must abide by the consequences.

We know of no rule of law which makes it obligatory upon such third person to hunt the sheriff up and give him notice that he claims the property upon penalty (if he does not do so) of losing his property, or being forced to accept what the property brings, in lieu of all damages.

If the property should bring its full value and there should be no basis for punitive damages, such third person, if he obtained the proceeds of sale, probably could not complain for the reason that he would have sustained no injury.

In the case at bar, the plaintiff might very well have thought that the property would bring its value and that obtaining the proceeds of sale would make him whole.

But, if it brought less than its true value, he has his action for the difference, notwithstanding the fact that he accepted the proceeds of sale, in part payment.

This exception is overruled.

What has been said with reference to the fifth and first exceptions applies to and disposes of the sixth and seventh exceptions, which are also overruled.

We must also overrule the second and third exceptions. These exceptions, to state them in substance, raise the question that there was some issue of fact, as to the ownership of the car of corn, at the time it was attached, which issue of fact ought to have been submitted to the jury.

It may be true, and doubtless is, that the possession of the draft and bill of lading, by the plaintiff, was only *prima facie* evidence of an intention on the part of Standard Cereal Company to retain the title to the corn, until the draft was paid. But there is nothing in the testimony to rebut such *prima facie* evidence.

The draft and bill of lading were put in evidence.

They show, on their face that the corn was shipped to Adams Grain and Provision Co. "Order notify F. M. & J. B. Pinson."

The agent of the provision company, whose testimony is uncontradicted, shows that the corn was owned by the holder of the draft, and bill of lading; that his company had no interest in it except ten dollars commissions, in case the sale had been completed and the car delivered and paid for.

The cashier of the plaintiff testified positively that the plaintiff was the owner and holder of the draft and bill of lading, and that they came by it, for value, in the due course of business, from Standard Cereal Company, the shipper.

The Cereal Company was the owner of the bill of lading and when it assigned it to the plaintiff it carried the title. *Bank* v. *R. R. Co.,* 25 S. C. 222; 82 Am. St. Reports 147; 72 S. C. 454; 82 S. C. 471; 38 Am. Dec. 409.

The defendant's attorneys seem to have the idea that there was some evidence to go to the jury, as to the ownership of the corn, because of inferences, which they think might be drawn, from certain communications had by the Adams Grain and Provision Co. with its alleged agent, at Cross Hill and the Pinsons, to whom the corn had been bargained, after the corn arrived there.

We do not see that any inferences, or benefit to the defendants can be drawn from such testimony.

But such inferences, if they could be drawn from the testimony, could not avail the defendants.

A bill of lading is a negotiable or *quasi* negotiable instrument, and when the shipper, who was the owner, transferred

it, for value, to the plaintiff, nothing that might have been said, or done, by Adams Grain and Provision Company, the Pinsons or anybody else, could affect the title of the plaintiff thereto.

A quotation from *Bank* v. *R. R. Co., supra,* is in point. On page 225, Judge McIver said: "As to the third subdivision of the first exception, we think it is too plain for argument; that if there was any understanding or agreement between McCauley & Co. (the shippers) and the Lawrence Manufacturing Company that the cotton should be delivered to that company without the production of the bills of lading, it would be a palpable fraud upon the bank, unless the bank knew of such arrangement at the time it discounted the drafts, and acquiesced therein * * * The remarks just made show that the first subdivision of exception second cannot be sustained, for even if the jury did believe that there was such a contract as that mentioned, the right of the plaintiff to recover would not thereby be defeated, inasmuch as to produce such result the jury must also believe that such contract was known to and acquiesced in by the bank."

This brings us to the only remaining exception, to wit, the fourth.

This exception alleges error in directing the verdict, for the reason, as alleged, that there was some testimony from which the jury might have inferred that the corn brought all it was worth at the sale.

The undisputed testimony shows that the corn was worth seventy-five (75c) cents per bushel at the time of the sale. Mr. Owings, the sheriff, so testifies.

Defendant's witness, Mr. Ropp, testifies to the same thing.

The defendants, themselves, went on the stand and were silent as to its value.

But in addition to all this, and what is absolutely conclusive, it appears that the Pinsons, who had originally bought the corn, stood ready to take it at seventy-five cents and

would have done so, had not the defendants had it attached and sold.

We do not see in the testimony any issue, as to the value of the corn, which should have been sent to the jury.

The exceptions, in full, should be included in the report of this case.

The judgment of this Court is that the judgment of the Circuit Court be modified by adding to the judgment of plaintiff the sum of twenty ($20) dollars, paid by it, as attorney's fees, and that the clerk of the Circuit Court do so correct the said judgment.

In all other respects the judgment is affirmed.

MR. JUSTICE WOODS *concurs except as to attorney's fees.*

MR. JUSTICE HYDRICK. We concur in the opinion of Mr. Justice Watts, except in the conclusion that plaintiff is entitled to recover the fee paid its attorneys for obtaining the release of its property from the attachment under which it was levied upon as the property of Adams Grain and Provision Company.

In ordinary actions at common law for damages for breach of contract or for tort, in the absence of malice, or circumstances which warrant the infliction of vindictive damages, the decisions of this Court have been against the recovery of attorney's fees as damages. *Brown* v. *Spann,* 3 Hill 324; *Ferguson* v. *DeHay,* 2 McM. 228; *Jeter* v. *Glenn,* 9 Rich. 380; *Welch* v. *R. Co.,* 12 Rich. 292; *Loeb* v. *Mann,* 39 S. C. 470, 18 S. E. 1. In the case last cited, which was an action of claim and delivery and for damages for the unlawful seizure of the plaintiff's property, as the property of one Perry, by the defendant, as sheriff, under a chattel mortgage given by Perry to one Bieman, this Court held that plaintiffs could not recover the fee paid their attorneys, and quoted with approval from the opinion of the Supreme Court of the United States in *Oelrichs* v. *Spain,* 15 Wall.

211, as follows: "In actions of trespass, where there is no circumstance of aggravation, only compensatory damage can be recovered, and they do not include the fees of counsel. The plaintiff is no more entitled to them, if he succeed, than is the defendant if the plaintiff be defeated. Why should a distinction be made between them? In certain actions *ex delicto* vindictive damages may be given by the jury. In regard to that class of cases, this Court has said: 'It is true that damages assessed by way of example may indirectly compensate the plaintiff for money expended in counsel fees, but the amount of these fees is not to be taken as a measure of punishment, or a necessary element in its infliction.' " Following that quotation, this Court said, at page 471: "We regard it as well settled in this State, both by decisions here and in the Supreme Court of the United States, that counsel fees are not allowable as part of the plaintiff's damages, for the reason that they cannot be said to be the necessary result of the act done by the defendant." With practical unanimity, the Courts of other States have reached the same conclusion. In *Bogard* v. *Tyler,* 25 Ky. L. R. 1416, 78 S. W., 138, the syllabus reads: "Where plaintiff claimed certain property attached as the property of another, and was successful in maintaining his claim against the attaching creditors, he was not thereafter entitled to recover attorney's fees expended in defending his right to the property in an action against the attaching creditors." To the same effect are *Worthington* v. *Morris,* 32 S. W. 269; *McGill* v. *Fuller,* 45 Wash. 615, 88 Pac. 1038; *Strauss* v. *Dundon,* 27 S. W. 505.

In *Livingston* v. *Exum,* 19 S. C. 223; *Hill* v. *Thomas,* Id. 230, and *Moorer* v. *Andrews,* 39 S. C. 427, 17 S. E. 948, it was held that a party enjoined might recover a reasonable attorney's fee, paid for procuring a dissolution of the injunction; but in each of these cases, an injunction bond had been given, as required by statute, wherein plaintiff agreed to pay to the defendant enjoined such damages as he

should sustain by reason of the injunction, if the Court should finally decide that plaintiff was not entitled to it, and the fee was allowed under that provision in the bond. But this is not an action on such a bond; but it is an action at common law to recover damages for the unlawful seizure of the plaintiff's property, as the property of another. We do not see upon what principle it can be distinguished from any other action at common law to recover damages for the unlawful seizure of the property of another, either under legal process, such as execution, or in actions in claim and delivery, or under distress for rent, or a past due chattel mortgage, or for any other cause.

A majority of the Court concurring in this view, the judgment below is affirmed.

MESSRS. CHIEF JUSTICE GARY *and* JUSTICES WOODS *and* FRASER *concur*.