13670

LAWTON v. LOWER MAIN STREET BANK

(170 S. E., 469)

*Mr. Alva C. DePass,* for appellant,

*Mr. Charles B. Elliott,* for respondent, 

July 18, 1933.

On rehearing August 28, 1933, the opinion of the Court was delivered by Mr. Justice Stabler.

This case was heard without a jury by his Honor, Judge Townsend, upon an agreed statement of facts, substantially as follows:

On December 24, 1931, the plaintiff indorsed in blank and deposited to his account in the defendant bank a check of one C. A. Harper for $100.00 and another of one Wiggins for $76.00. Both were made to his order and drawn on Peoples State Bank of South Carolina, Estill branch.

On the afternoon of the same day, the checks were delivered by the defendant to the South Carolina National Bank of Columbia for collection; but as the 25th and 26th were holidays, they were not sent out by the latter bank until Monday, December 28, when it transmitted them, by mail, direct to the drawee bank at Estill. Upon their receipt, the Estill bank charged the account of Harper with $100.00 and the account of Wiggins with $76.00, and delivered the checks to their respective drawers. On December 30, it issued its check on Peoples State Bank of South Carolina, Charleston branch, for $300.00, which included the two items in question, to the order of the South Carolina National Bank, which received it on December 31 and immediately transmitted it to its branch bank at Charleston; but the check was never collected because of the closing of the Peoples State Bank of South Carolina, on December 31.

The South Carolina National Bank notified the defendant bank on January 8, 1932, that it had not received payment of the checks; and the latter states that, as is its custom when

notified of uncollected checks, it mailed on the same date to the depositor a copy of the debit slip, but plaintiff claims that he did not receive such copy or any notice of it. From January 8 to January 25 plaintiff deposited with the defendant sums of money aggregating $916.15; and on January 25 the defendant charged his account with the $176.00 and mailed him a notice to that effect. Subsequently, when he received his canceled checks, he also received with them a debit slip with a notation thereon that these two items had been charged back to him.

After receivers were appointed for Peoples State Bank of South Carolina, its creditors were duly advised that they would be given until October 15, 1932, in which to file their claims. Among those made by the South Carolina National Bank was one for $381.15, asserted by it to be preferential, and attached to it was the check for $300.00 issued by the Estill bank. The records of the claimant showed that the only party interested in the $176.00 of this claim was the defendant herein. Nowhere in the records of the claims does any interest of the plaintiff Lawton appear. The defendant bank, however, at this time asserts no interest whatsoever in this claim.

The plaintiff alleged that the defendant had wrongfully converted the $176.00 to its own use; the defendant denied the allegations of the complaint. Judge Townsend held that the Act of 1930 (36 Stat. at Large, page 1368), now appearing as Sections 6948–6962 of the Code of 1932, controlled the rights of the parties to the transaction, and that, under the agreed facts, no negligence on the part of either the defendant or of the South Carolina National Bank was shown to be a proximate cause of the loss complained of; and gave judgment for the defendant. From the Court's decree plaintiff appeals.

The appellant contends that the Act of 1930 does not apply under the facts of this case, as it does not change the relation of debtor and creditor, where such relation is created

or exists by reason of a contract, express or implied, between the parties.

In *Macomber & Co. v. Bank,* 166 S. C., 236, 164 S. E., 596, 599, tried on circuit in January, 1930, this Court had occasion to refer to the law then governing in this State with reference to checks deposited with a bank for collection. Holding that the New York rule obtained, the Court, speaking through Mr. Justice Bonham, said:

"It was for a while an issue in this State whether the Massachusetts rule or the New York rule governed. The New York rule is that, when a bank receives paper for collection and forwards it to another bank, the latter becomes the agent of the forwarding bank and is not the agent of the depositor, or the owner of the check.

"The Massachusetts rule is that when a bank receives paper for collection it merely obligates itself to exercise proper care and diligence in selecting its agents and sub-agents, and the bank to which it forwards the paper, the collecting bank, is not the agent of the forwarding bank, but is the agent of the depositor or owner of the paper."

One of the main questions, therefore, presented by the present appeal is: To what extent, if at all, does the 1930 Act abrogate or change the New York rule prevailing in this State at the time of its passage? The Act went into effect on March 28, 1930, and so far as we have been advised there is no decision of this Court bearing directly upon the point at issue.

We agree with the respondent that a careful reading of the statute in its entirety leads to the conclusion that its purpose was to abrogate or change the New York rule governing in this State and to supplant it, to the extent provided for in the Act, with the Massachusetts rule. Section 2, appearing as Section 6949 of the Code of 1932, reads as follows: "Except as otherwise provided by agreement and except as to subsequent holders of a negotiable instrument payable to bearer or endorsed specially or in blank, where an item

is deposited or received for collection, the bank of deposit shall be agent of the depositor for its collection and each subsequent collecting bank shall be sub-agent of the depositor but shall be authorized to follow the instructions of its immediate forwarding bank and any credit given by any such agent or sub-agent bank therefor shall be revocable until such time as the proceeds are received in actual money or an unconditional credit given on the books of another bank, which such agent has requested or accepted. Where any such bank allows any revocable credit for an item to be withdrawn, such agency relation shall nevertheless continue except the bank shall have all the rights of an owner thereof against prior and subsequent parties to the extent of the amount withdrawn."

It is to be observed that this section provides, as ■■ was not the law under the New York rule, that every bank in the chain of collection becomes, not the agent of the deposit bank, but "subagent of the depositor" of the item. It will also be found, upon further examination of this section, and from an examination of other sections of the Act, that the rule is abrogated in other particulars. The respondent, however, takes this position: That in its use of the clause "where an item is deposited or received for collection," found in Section 2, the Legislature "intended to cover the situation when a bank takes an item and credits it to the account of the depositor, as well as when the item is marked for collection." In other words, the contention is that the Act controls whether the item is deposited for credit or is received for collection. We think this view is unsound. It is to be remembered that the Legislature, in its passage of the statute, sought to change a rule of law long prevailing in this State, and if it had intended to go to the extent claimed by the respondent, it would have doubtless said so in no uncertain language. An analysis of the phrase quoted is deemed unnecessary; it undoubtedly means—and was intended to mean—that "where an item is deposited for col-

lection or is received for collection." In other words, it is clear to our mind that it was not the purpose of the Act to change (nor does it do so) the well-established rule of law that where an item is indorsed without restriction by a depositor, nothing appearing to indicate that it was received for collection, and it is at once passed to his credit by the bank, and he is permitted to check upon the account, he becomes a creditor of the bank, which, as the owner of the paper, is not the agent of the depositor in collecting it but collects on its own behalf. Expressed differently, the Act has no reference to nor does it control in a case where the bank receives the item, not for collection, but places it to the account of the depositor as a cash deposit and permits him to check thereon. In such case the relation of creditor and debtor is created between the depositor and the bank.

Of course, whether the deposit is made for collection merely, or is a deposit for credit, depends on the intention of the parties to the transaction as shown from all the attendant circumstances. In the case at bar, therefore, in order to determine whether the rights of the parties are controlled by the 1930 Act, as held by the trial Judge, it will be necessary to inquire whether the defendant, in receiving the two checks and placing their aggregate sum to the account of the plaintiff, and in permitting him thereafter to check out all or a portion of it, became the owner of the items and not merely the collecting agent of the depositor.

The complaint, *inter alia,* alleges: "On the 24th day of December, 1931, the plaintiff deposited to his credit, as a cash item, subject to his checks thereon, the following items, namely: a check of C. A. Harper, to plaintiff, for One Hundred ($100.00) Dollars, drawn upon the Peoples State Bank of South Carolina, Estill branch, and a check of one Wiggins, to plaintiff, for Seventy-six ($76.00) Dollars, drawn upon the Peoples State Bank of South Carolina, Estill branch. That said checks were received as cash deposits by

defendant, on said date, and were later presented to the drawee bank and paid on or about the 30th day of December, 1931; said Peoples State Bank, Estill branch, having to the credit of C. A. Harper more than sufficient funds to pay said One Hundred ($100.00) Dollar check, paid same out of same and charged it to the account of C. A. Harper, and likewise, said bank had more than sufficient funds to the credit of Wiggins and paid same out of said funds and charged it to the account of Wiggins, both of whom were depositors with the Peoples State Bank of South Carolina, Estill branch. That the plaintiff, in accordance with a contract and agreement with the defendant in making said deposit on December 24, 1931, duly checked out said fund, or a large portion of same, which checks were duly honored by said defendant bank."

The defendant, by its answer, admits having received the checks and deposited them in plaintiff's name and that the plaintiff checked out a portion of the proceeds, but "denies that the deposits made by the plaintiff in the Lower Main Street Bank were received as cash items and specifically denies that the plaintiff had a contract and agreement with this defendant in making said deposit that the said funds or any portion thereof should be checked out."

It does not appear that any testimony was taken in the case, and the following agreed facts alone have any direct bearing on this point:

"On December 24th, 1931, the plaintiff deposited in his name, endorsed by plaintiff in blank, in the Lower Main Street Bank, a check of C. A. Harper to the order of the plaintiff for One Hundred ($100.00) Dollars, drawn on Peoples State Bank of South Carolina, Estill branch, and a check of one Wiggins to the order of plaintiff, in the sum of Seventy-six ($76.00) Dollars, drawn on the same bank. A copy of the deposit slip used by the plaintiff in making said deposit is attached. No entry in a deposit book was made by the defendant at the time, but a certified copy of the de-

posit slip was given to the plaintiff on December 24, 1931, such entry made thereon, as will appear from the copy thereof attached to this agreed statement of facts.

"Deposited in
The Lower Main Street Bank
Columbia, S. C.
By J. M. Lawton
12–24–1931

| Please List Each Check Separately | | |
|---|---|---|
| | Dollars | Cents |
| Currency | | |
| Silver | | |
| Checks as follows | | |
| | 76 | |
| | 100 | |
| Duplicate | 176 | |
| E. M. | | |

"The defendant, the Lower Main Street Bank, permitted the plaintiff to draw on his account in said bank, after the deposit of the two checks in question. After January 8, 1932, the plaintiff did not have the aggregate sum of One Hundred and Seventy-six ($176.00) Dollars to his account in the defendant bank, until January 25, 1932."

The Circuit Judge did not pass upon the nature of the deposit—whether for credit or for collection. It may be, however, as suggested in argument, that he was of opinion that the statute was applicable in either event. And respondent strongly argues that if this construction of the Act is not correct, the Legislature may as well have said nothing, for the reason that it is the custom of banks to credit items to depositor's accounts merely for their convenience, and that it was the plain purpose of the statute to relieve the banks in such cases from liability and to prevent the application of the old rule of law that the bank became the owner of the

item, citing *Southern Stove Works v. Bank,* 112 S. C., 230, 100 S. E., 75, 76, in support of its position.

While the statement of facts in the opinion in that case is meager, it appears that the check there in question was drawn in favor of the plaintiff on the defendant bank and deposited by the payee in the National Bank of Evansville, Ind., which sent it to the defendant for collection. The defendant charged the item against the drawer of the check, one of its depositors, and credited the account of its correspondent with the amount of the collection. Later—how long is not stated, but we assume at the close of the day's business—it found that the drawer of the check did not have sufficient funds on deposit to meet its payment. Thereupon, it canceled the entries made by it as to both accounts. Under this state of facts, the trial Judge instructed the jury that after the defendant charged the amount of the check to the account of the drawer and credited the account of its correspondent bank, that was payment, and it could not afterwards revoke it by changing its books. On appeal this Court held such charge to be error, saying: "If the draft, check, or item is not collected or paid, the bank has the right to deduct it from the customer's account." It is seen that the question decided was as to the right of the drawee or payor bank, after it discovered that the drawer of the check did not have sufficient funds on deposit to meet its payment, and while the check was still in its possession, to correct by cancellation certain entries that it had made upon its books with respect thereto. No such question is presented in the case at bar. It is here conceded that the drawee bank honored the two checks drawn upon it, and issued and transmitted to the South Carolina National Bank its own check for $300.00, in which were included these two items.

The respondent also calls attention to a Florida case, *Edwards v. Lewis,* 98 Fla., 956, 124 So., 746, 749, in which the Supreme Court of that state discusses the following statute providing for the collection of items by the bank

with which they are deposited: "When a check, draft, note or other negotiable instrument is deposited in a bank for credit, or for collection, it shall be considered due diligence on the part of the bank in the collection of any check, draft, note or other negotiable instrument so deposited, to forward en route the same without delay in the usual commercial way in use according to the regular course of business of banks, and the maker, endorser, guarantor or surety of any check, draft, note or other negotiable instrument, so deposited, shall be liable to the bank until actual final payment is received, and when a bank receives for collection any check, draft, note or other negotiable instrument and forwards the same for collection, as herein provided, it shall only be liable after actual final payment is received by it, except in case of want of due diligence on its part as aforesaid." The Court said the statute "has changed the rule so that now the relationship of the depositor of commercial paper with his bank of deposit, even though the deposit is not for collection, is in the nature of principal and agent, until such paper has been collected and payment actually received by the bank, in which event the depositor becomes the creditor of his bank, the debtor." Only a casual reading is necessary to see that the Florida statute is entirely different from ours, being specifically applicable to a deposit for credit as well as to one for collection.

We are told also that this is a law case in which both parties waived trial by jury, and that this Court is bound by the findings of fact by the trial Judge. While this is a correct principle of law, it is to be observed that the trial Judge did not in this case determine the facts; they were agreed to by the parties litigant. The question, therefore, is whether the trial Court correctly construed, in relation to such facts, the statute in question.

It is conceded that the two checks, unrestrictedly indorsed, were deposited to the credit of the plaintiff, and that he was allowed, without any restriction or understanding, to

check upon the account. The deposit slip issued to him in the transaction shows a deposit of the two items without any condition as to their acceptance by the bank. It is not contended that there was any understanding between the parties, either oral or written, that the bank was taking the items for collection. On the contrary, the circumstances of the transaction indicate that it was a general deposit and that it was so intended by the parties. Under the agreed facts, the trial Judge should have held that the relation of debtor and creditor was created between the bank and the depositor, and that the Act of 1930 did not apply. Of course, if the checks had not been honored by the bank upon which they were drawn when presented to it for payment, the defendant would have had the right to charge them back to the account of the plaintiff, or to have brought action against him for the recovery of the amount on his indorsement, which guaranteed the payment of the checks upon their presentation to the drawee or payor bank.

Appellant's contention that the defendant bank was negligent in sending the checks to the South Carolina National Bank for collection, but should have sent them itself directly to the drawee bank, is without merit. While, under the provisions of the Act, which changed the rule theretofore prevailing in this State, the defendant could have sent them directly to the drawee bank for collection, that mode of collection is not exclusive even under the terms of the Act itself.

We may say in passing that the defendant, under the claim filed by the South Carolina National Bank with the receivers of the Peoples State Bank for the $176.00 in question, is entitled to payment of that amount by such receivers.

The decree appealed from is reversed, and the case is remanded to the lower Court, with instructions that judgment be entered up for the plaintiff under Rule 27 of this Court.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM concur.

## On Petition for Rehearing

*Per curiam.*

The respondent in this case has filed a lengthy petition for a rehearing. Its main contention is that the Court, in its opinion heretofore filed, failed to consider and interpret the entire statute involved. In this the petitioner is wrong. The decision, as indicated in the opinion, is grounded upon the Court's interpretation of Section 6949 and the applicable provisions of other sections of the Act.

The petition, therefore, is dismissed, and the order staying the remittitur is revoked.

Mr. Chief Justice Blease and Messrs. Justices Stabler, Carter and Bonham concur.