July 25, 1938. The opinion of the Court was delivered by
The question to be decided is whether or not the appellant bank received the draft in question as a mere collecting agent, or as a purchaser, so that title and ownership vested in it.
On December 31, 1937, Noble-Trotter Rice Milling Company, Inc., a nonresident foreign corporation at Lake Charles, Louisiana, drew a draft in the sum of $1,344.50 on Allen Bros. Milling Company, Columbia, South Carolina, which represented the purchase price of a shipment of rice. Attached to the draft was a bill-of-lading covering the shipment, an invoice thereof, and a certificate of insurance. This draft was made payable directly to The Calcasieu-Marine National Bank, located at Lake Charles, and was deposited on December 31st by the rice milling company in that bank, where it maintained a regular account, and *Page 215 
where it had been transacting its business for years. The draft, according to the contention of the bank, was not entered for collection, but was treated as cash, and was immediately and unconditionally placed to the credit of the rice milling company, and made subject to its check.
In due course, the draft, together with the attached papers, was forwarded by the bank for collection to the First National Bank, Columbia, South Carolina, where it was paid by the drawee, Allen Bros. Milling Company, on January 10, 1938, after the deduction of $14.45, which was an authorized discount in the event payment was made not later than January 10th.
The day the draft was paid to the First National Bank of Columbia, the proceeds were attached in its hands by M.P. Campbell for the satisfaction of an unliquidated demand against the Noble-Trotter Rice Milling Company, which he was then asserting in an attachment proceeding brought in the County Court of Richland County at Columbia. The appellant bank intervened by petition, claiming to be rightfully entitled to the money by reason of its ownership of the draft. The issue was tried before the County Judge, without a jury. At the conclusion of the testimony, counsel for Campbell made a motion for a directed verdict, and for judgment thereon, and a similar motion was made on behalf of the appellant bank. Judgment was rendered in favor of Campbell, and the case is here upon appeal from that judgment.
The draft bore the endorsement of the appellant bank, directing payment "to the order of any bank, banker or trust company, for collection only." The bill-of-lading which was attached thereto, was endorsed in blank by the milling company.
There was also attached to the draft, as stated, a certificate of insurance protecting the shipment in transit to the extent of $1,590.00, loss, if any, payable to the "order of" the rice milling company. This certificate was likewise endorsed in blank by the milling company and delivered *Page 216 
to the bank. The evidence shows that the draft in question, and two others, were listed and deposited by the milling company under a deposit slip customarily used by it for cash items, and which contained the following stipulation printed at the top:
"In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for default or negligence of its duly authorized correspondents nor for losses in transit. * * * It may charge back any item any time before final payment, whether returned or not. Also any item drawn on this bank not good at close of business on day deposited."
The deposit slip is dated December 31, 1937, and has listed thereon the following items, which were credited and made subject to immediate withdrawal:

 "Draft 4463:
 Allen Bros. Mlg. Co. ................... $1,344.50
 Draft 4464:
 J. Drake Edens Co. .................... 571.25
 Draft 4465:
 Carolina Gro. Co.
 Georgetown .............................. $473.00
 __________
 Total ................................ $2,388.75"

The passbook of the rice milling company, and the original ledger sheet of the bank, stating the account of the milling company, show the entry of a deposit in the above amount on December 31st. The ledger sheet also shows various deposits and various withdrawals during the period from December 31, 1937, to January 10, 1938.
The passbook contained this printed notice: "Always bring your book with your deposits. See that the entries agree with your tickets." And then follows a stipulation *Page 217 
identical in language with that printed on the deposit slip.
So much for the documentary evidence.
Mr. Dugan, assistant cashier of the appellant bank, testified that the draft was handled as a cash item, in accordance with an agreement entered into between the bank and the milling company for the rice milling season which is active from October until May. Under this agreement, when a draft payable directly to the bank was received, with bill-of-lading attached, an unconditional credit was immediately given to the milling company; or cash in full, if desired. The bank received interest, termed a discount, on the amount of a draft for the time that the draft was outstanding, that is, between the date that it was deposited up to the date that it was paid. The parties had a settlement each month with reference to this discount on all drafts handled. The bank received either a check therefor from the milling company or charged the amount to the account of the milling company. The amount of the rice shipments during the season was about $100,000.00 per month, representing a great many separate transactions. In each instance, unconditional credit was given to the milling company upon receipt of the papers noted.
The deposit slip used by the milling company, Mr. Dugan said, was the one used when the drafts were to be treated as cash items. The appellant considered that it had title to the draft as soon as it was received and credit was given to the milling company in its pass book, — no credit entry being made in a depositor's pass book unless unconditional credit was granted.
The bank had handled some collection items for the milling company, but they were dealt with by a separate department — the collection department. Such items were not entered in the pass book until they were actually paid. For them a regular collection receipt was given, different from the deposit slip in this case, reciting that they were received for collection only. The bank's transit department handled cash items purchased outright, and this department *Page 218 
had entire charge of the transaction in question. It appears that the stamp on the face of the draft, "No. N-557" is the discount serial number, indicating a cash item, which is different from the stamp used in the collection department. It was also stated that if this draft when presented had been dishonored, it would have been charged back to the milling company.
The crucial question in this case has to do with the circumstances under which a bank, in taking from a customer a check or draft in the usual course of its banking business, will become the owner of such check or draft, as distinguished from a mere collecting agent for the customer. See First National Bank v. McSwain, 93 S.C. 30,75 S.E., 1106; Ann. Cas., 1914-D, 809.
The authorities upon the question are multitudinous, and are irreconcilable. Annotations: 11 A.L.R., 1057, 16 A.L.R., 1084, 42 A.L.R., 495, 68 A.L.R., 730, and 99 A.L.R., 490. With a few exceptions, the rule is generally recognized that the determination of the question is controlled, in the absence of an express agreement, by the intention of the parties, as shown by the attending, circumstances.Lawton v. Lower Main Street Bank,170 S.E., 469, 170 S.C. 334; Michie on Banks and Banking (Permanent Edition), Vol. 5, page 9. A reference to the numerous cases cited in the notes to the foregoing text from Michie's valuable work, shows that the rule supported by the very decided weight of authority is that, a deposit of a check, draft, or other commercial paper in the ordinary course of business, whereby the depositor received from the bank an unconditional credit of the amount as cash, against which he may draw, with nothing to qualify the effect of such act, prima facie operates to transfer the title to the bank. In such case the relation between the bank and the depositor is that of debtor and creditor; the bank is a purchaser, and the absolute owner of the paper, and may maintain action thereon. *Page 219 
"According to the prevailing view, the rule as to the passing of title to commercial paper, deposited and credited as cash, applies, although the bank has the right to charge dishonored paper back to the depositor instead of proceeding against the maker." Michie on Banks and Banking, Vol. 5, 65. (Citing numerous cases.)
And it has been held that an interest arrangement will not prevent a bank from becoming the sole owner of a draft. Thus, where the bank advances the full amount of a draft, it becomes the unconditional owner, though it is understood it will collect interest on the amount advanced, depending upon the time it takes for collection. Vickersv. Machinery Warehouse, etc., Co., 111 Wn., 576,191 P., 869.
The determination of the question of title to commercial paper transferred to a bank which credits it to the depositor's account, fundamentally involves a question of intention. Of course, where there is direct evidence of such intent, as where the contract expressly provides as to the passing of title, the question is comparatively simple. Usually, however, the parties make no express agreement of this character, so that the question is largely one of determining their intention, from all attendant circumstances. Whether the bank becomes the owner of the paper or a mere agent for its collection may be shown in different ways; it would seem that the right accorded to a depositor to draw upon the funds is especially material, as showing an intention that title should pass to the bank.
It was said in Ryan v. Columbia National Bank,140 S.E., 593, 142 S.C. 231, that to charge a depositor with implied assent, some circumstances beyond the mere presence of the stipulation on the deposit slip should be presented, as for instance, his knowledge that it was there; his continued use of the slip from, and his settlements with the bank in conformity with the statements, and others.
If the parties intend at the time of the transaction that the paper shall be treated as cash, the title passes immediately *Page 220 
upon receipt of the deposit; but if the intention is that the bank shall not be responsible except as an agent for collection, title remains in the depositor. In addition to the other means referred to for ascertaining this intention, it may be determined from a consideration of a course of conduct, or the ordinary course of business as disclosed by the evidence. In some cases, whether the depositor was a regular customer and what had been the practice as to permitting him to draw checks against his deposit account, including such deposits, have been treated as circumstances for consideration, among others.
It is contended by the respondent that the only reasonable inference to be drawn from the evidence in the case at bar is that the parties intended that the appellant bank should be a mere collecting agent, and that the title to the draft remained in the rice milling company. In support of this contention, among other things, our attention is directed to the stipulations appearing on the deposit slip, and inserted in the passbook.
There are a few cases from this State which have an apt but limited application to the question at issue, because the exact question here was not presented.
In Lawton v. Lower Main Street Bank (1933), 170 S.C. 334,170 S.E., 469, it was held that "where an item is indorsed without restriction by a depositor, nothing appearing to indicate that it was received for collection, and it is at once passed to his credit by the bank, and he is permitted to check upon the account, he becomes a creditor of the bank, which, as the owner of the paper, is not the agent of the depositor in collecting it but collects on its own behalf." It was further held that where checks, unrestrictedly endorsed, were deposited and credit given with the unrestricted right to check against it, and the deposit slip showed no condition as to their acceptance by the bank, the circumstances indicated that a general deposit was intended by the parties and title passed to the bank. *Page 221 
In the Ryan case, to which reference has been made, the Court, speaking of a somewhat similar stipulation on a deposit slip, quotes with approval this declaration from Harterv. Bank of Brunson, 92 S.C. 440, 75 S.E., 696. "It does, however, afford evidence * * * that the paper so deposited was not absolutely sold to the bank."
And immediately following, quoted this from AmericanSav. Bank v. Dennis, 90 Wn., 597, 156 P., 559:
"The printed declaration on the deposit slip, to the effect that the bank in receiving checks acted only as agent, was some evidence of an understanding that it was the intention of the parties that the bank should take the check as agent and not as owner."
And continuing, the Court said: "If it should be considered as some evidence, it cannot be considered as conclusive evidence of the fact, the only ground upon which a directed verdict could have been justified."
These declarations constitute a clear recognition by the Court that the terms and stipulations contained on the deposit slip are not conclusive. The intention of the parties must control, so far as that intention is disclosed, or can be discovered from the nature of the transaction.
"According to the view expressed in some cases, particularly earlier ones, a notice in the customer's passbook or upon a deposit slip that the bank acts only as agent in receiving checks or drafts, or statements that such instruments are credited conditionally, subject to final payment, prevents the passing of title to the bank. It has been held that such a notice prevents title passing, although the depositor has been permitted in certain instances to draw against uncollected checks notwithstanding such a notice. Of course, the bank may waive such a provision. The more recent cases, however, do not regard such statements as conclusive upon the question of title; they take the position that they should be considered in determining whether the parties intended that title to commercial paper should pass to the bank, but they yield to the actual agreement *Page 222 
of the parties as evidenced by a course of conduct or otherwise. Thus, a notice upon a deposit slip or in a savings bankbook that checks are credited provisionally, subject to final cash payment, or conditionally, subject to be charged back if not paid, has been held not to prevent the bank from getting title to them when it credits the checks to the depositor's account as cash or permits him to draw against them." 7 Am. Jur., Sec. 456.
And numerous cases point out that banks have the right to charge back under the law, without reference to the terms of the deposit slip. It being held that this right to charge back dishonored paper is in nowise inconsistent with the rule that it acquires title by such deposit. 7 Am.Jur., Sec. 453.
We are of the opinion that although stipulations in the depositor's passbook or on deposit slips should be considered in determining whether the parties intended that title to commercial paper should pass to the bank, such stipulations are not determinative of the question, but yield to the actual agreement of the parties as evidenced by their course of conduct.
This view is upheld by numerous cases, including Johnsonv. First National Bank T. Co. (1934; D.C.),8 F. Supp. 788; Olinger v. Sanders (1931), 92 Ind. App. 358,174 N.E. 513; Re. Riverton State Bank (1934; Wyo.), 38 P.2d 603.
In Taylor v. Dierks Lumber Coal Co. (1931),183 Ark. 937, 39 S.W.2d 724, a printed notice in the depositor's passbook that all items not payable in the city received by the bank for credit or collection were taken at the depositor's risk and that checks and drafts were credited subject to payment was held not to prevent the passing of title to the bank where checks were credited to the depositor unconditionally, and without any special understanding. The Court said that the notice merely placed the same liability on the depositor as was imposed by its endorsements. *Page 223 
So, in Andrew v. Security Trust and Sav. Bank (1933),214 Iowa, 1199, 243 N.W., 542, where the bank gave a depositor credit for checks on its overdrawn account, a notice in the depositor's passbook that "this bank acts only as a depositor's collecting agent" and "all items are credited subject to final payment" was held not to prevent title from passing immediately to the bank. The Court said that the words "collecting agent" were not employed in a technical sense and could not be given the effect of defining the exact legal relationship between the depositor and his bank.
And in In Re. Canal Bank T. Co. (La.), 181 La., 856,160 So., 609, 99 A.L.R., 473, it was held that title passed to the bank where a depositor indorsed, without restriction, drafts on other banks and received immediate credit therefor in a checking account, although a printed statement on the deposit slip said that the bank acted only as agent and might charge back any uncollected drafts to the depositor's account. The Court said that the printed statement yielded to, and was governed by, the implied intention of the parties in the absence of an express agreement to the contrary.
And in Pearson v. Brennan (1935; C.C.A. 1st),75 F.2d 958, (reversing the decision of the lower Court [1933; D.C.], 4 F. Supp. 285), which had held that a bank did not acquire title to a check where the deposit slip provided that as to all items of deposit the bank acted only as agent for collection and accepted them subject to final payment, the Court said that the provision was for the benefit of the bank and not of the depositor and that it was waived when the bank extended credit for the amount of the check and allowed withdrawals against the depositor's account in excess of the credit.
And see Krauss v. Chatham-Phenix Nat. Bank (1932),143 Misc., 508, 256 N.Y.S., 721, holding that a provision in a passbook and on a deposit slip as to items received for collection was not material where, by agreement, a check was received and treated "as cash." *Page 224 
The case of In Re. Canal Bank T. Co., above referred to, is especially pertinent and applicable here, because of the fact that the Noble-Trotter Rice Milling Company and the appellant bank are non-resident corporations with their places of business in that state (La.), that being the state where the contract in this case was made.
We think that the preponderance of the evidence discloses a clear intention on the part of the rice milling company and the appellant bank to disregard the stipulation on the deposit slip and in the passbook; and that the facts show that such stipulations were altogether superseded by the actual agreement of the parties, as evidenced by their course of conduct, as a matter of law.
The uncontradicted evidence shows that the method of handling this and other similar transactions by the bank with the rice milling company is at utter variance with such stipulations. The testimony is that the deposit slip was merely a credit memorandum for the bank's bookkeeper; that the draft was not handled by the bank as an item for collection for the milling company, but as an item for collection by the bank for its own account, and on its own responsibility. The draft was payable directly to the bank as payee, and was secured to its satisfaction by the accompanying bill-of-lading, properly endorsed in blank, and by insurance against loss in transit. On the faith of this secured obligation, the bank credited the account of the milling company for the full amount of the draft, which was subject to immediate withdrawal by the milling company. The testimony shows that the milling company made monthly settlements with the bank, in conformity with the agreement that the milling company would be charged a discount, which in this case took the form of an interest charge; and that in case the appellant bank accepted a draft for collection merely, a different deposit slip was used by the milling company.
We conclude, after a consideration of all the facts in the case, that the title to the draft passed to the bank, and that it *Page 225 
is entitled to the proceeds now held in the custody of the First National Bank of Columbia.
The draft in this transaction was endorsed by the appellant bank, as will be recalled, "for collection only." The respondent argues that this in itself is a most significant circumstance, tending to show that the bank forwarded the draft merely as a collecting agent for the milling company. The evidence shows that the custom of the bank to forward such drafts for collection, is the plain custom to forward for collection for itself.
We are unable to attach any significance to the form of the endorsement placed upon the draft. The same point was raised, and decided adversely to the contention of the respondent in Fourth National Bank v. Bragg, 11 A.L.R., 1034, 127 Va., 47, 102 S.E., 649; Burton v. United States,196 U.S. 283, 49 L.Ed., 482, 25 Sup. Ct. Rep., 243, and numerous other cases.
The respondent also lays stress upon the fact that the bill-of-lading contained the following endorsement, placed there by the appellant bank: "Notice — This bank hereby notifies all concerned that it is not responsible, either as principal or agent, for the quantity, quality or delivery of the goods covered by this bill-of-lading." It is contended that this endorsement is a strong circumstance going to show that the appellant bank possessed only limited authority and limited liability and was acting only as the milling company's collecting agent; that such endorsement is inconsistent with ownership, because, it is argued, if the bank purchased the draft and the bill-of-lading, it became the owner of the goods, and, therefore, must assume the obligations of the seller under its contract of sale to Allen Bros. Milling Company. And it is urged that everything in the case points to the conclusion that the parties intended to carry out the transaction under the terms embodied in the deposit slip, rather than in disregard thereof. The latter contention we have disposed of *Page 226 
Something should be said with reference to the point bearing upon the endorsement on the bill-of-lading.
In this case the shipment of rice was consigned to "order of Noble-Trotter Rice Milling Company," who assigned, transferred and delivered the bill-of-lading to the bank by blank endorsement.
The universal rule is that a bill-of-lading is a symbol of property therein mentioned as having been received for transportation, and when properly transferred, will operate to pass the title to the goods while in transit as effectually as though a bill of sale had been and the goods themselves delivered. 9 Am. Jur., 690.
Such transfer, however, does not generally create any liability against the assignee, who holds the bill-of-lading with draft attached, in favor of the drawee or consignee for any default in the performance of the consignor's contract. This principle is stated in 9 Am. Jur., Sec. 444, page 694, as follows, and is well supported by numerous authorities:
"The rule now observed, with practical uniformity, is that the transferee or assignee of a negotiable bill-of-lading with a draft attached is not, in the absence of bad faith, liable to the consignee or drawee for any default in the performance of the consignor's contract in relation to the shipment."
A draft similarly endorsed is found in Fourth Nat. Bankof Montgomery, Ala., v. Bragg, supra. The Court held that this was a precautionary measure which the bank had a right to adopt without affecting the contract between it and the depositor. That "it is manifest that the Montgomery Bank, forwarding this draft as its own property, wished to protect itself against any question that might arise as to the title, quantity, or quality of the goods."
An endorsement on a bill-of-lading in identical language is found in the case of Leonhardt Co. v. W.H. Small Co., 119 Am. St. Rep., 994, 117 Tenn., 153,96 S.W., 1051. In that case the Court held that the purchase by a bank of a draft with a bill-of-lading attached, representing *Page 227 
goods shipped, does not so vest the property in such goods in the purchasing bank that it becomes substituted to all the liability of the original drawer and seller. In the course of an able opinion, the Court said:
"It is a fact of common knowledge that a large part of the commercial business of the country is carried on through the medium of drafts, and that the immense crops of the south and west are marketed under contracts to draw for the purchase price with bill-of-lading attached. If the Courts shall adopt the rule insisted upon by the complainants, and enforced by the decree of the Court of chancery appeals, it will result in destroying this convenient method of handling, moving, and paying for the crops of the country, for the banks will necessarily be compelled to refuse to buy drafts with bills-of-lading attached, or to handle them as collateral security or otherwise. Banks have neither the time nor the facilities to investigate the genuineness of bills-of-lading, or the contracts made between their customers with parties residing in other states, and to hold them responsible for the frauds and mistakes of shippers would utterly destroy the negotiability of drafts with bills-of-lading attached."
In our opinion, the endorsement was not inconsistent with ownership, as shown by the foregoing authorities.
As already stated, under the law, as applied to the facts in this case, we are of the opinion that the appellant bank is entitled to the proceeds of the draft in question, and that the evidence is such that no verdict or judgment to the contrary could be sustained.
Judgment reversed.
MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER and MR. ACTING ASSOCIATE JUSTICE L.D. LIDE concur.
MR. JUSTICE CARTER did not participate on account of illness. *Page 228